1  JEROME R. AIKEN (WSBA NO. 14647)
2  Meyer, Fluegge & Tenney, P.S.
   230 S. Second Street / P.O. Box 22680
3  Yakima, WA 98907-2680
   Phone: (509) 575-8500
4  Email: aiken@mftlaw.com

   Attorneys for Plaintiffs James Blais and Gail Blais
5

6              UNITED STATES DISTRICT COURT
               EASTERN DISTRICT OF WASHINGTON
7

8  JAMES BLAIS and GAIL BLAIS,        )
                                       )   NO.
                  Plaintiffs,          )
9                                      )   COMPLAINT FOR
         vs.                           )   DECLARATORY AND
10                                     )   INJUNCTIVE RELIEF
   ROSS HUNTER, in his official        )
11 capacity of Secretary of Washington )
   State Department of Children, Youth )
12 and Families,                       )
                                       )
13                Defendant.           )
   _____    )
14

15         Plaintiffs James Blais and Gail Blais, for their causes of action against

16 Defendant, state as follows:

17                        I.  **INTRODUCTION**

18         1.     James Blais and Gail Blais wish to become foster parents in order to

19 provide a loving and caring home for children.  They also hope to be able to adopt

20 their biological granddaughter, H.V.

**Complaint for Declaratory and Injunctive Relief - 1**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

2.      The Washington State Department of Children, Youth and Families ("Department") has refused to act on the Blais' application to become foster parents. The Department impermissibly and unreasonably has declined to make a decision on the Blais' application because the Department disagrees with their sincerely held religious beliefs.  The Department's steadfast inaction is based on an irrelevant and entirely hypothetical construct about how the Blaises may act or respond to a foster child who develops or identifies as lesbian, gay, bisexual, transgender and questioning ("LBBTQ+") fifteen or more years in the future.  The Department's unwarranted refusal to act discriminates against the Blaises for their religious beliefs and practices and restricts their constitutionally protected religious exercise.

3.      Plaintiffs seek a declaratory judgment that the conduct of the Defendant and the Department which he oversees is unconstitutional, and injunctive relief barring the Defendant and the Department which he oversees from denying Plaintiffs' foster parent application based on their religious beliefs.

4.      This action arises under the provisions of the First and Fourteenth Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

## II.  THE PARTIES

5.      James Blais is a resident and domicile of the State of Washington.  He is an observant and practicing member of the Seventh-day Adventist Church.  He has been married to Gail Blais since 2013.

**Complaint for Declaratory and Injunctive Relief - 2**

6.      Gail Blais is a resident and domicile of the State of Washington.  She is an observant and practicing member of the Seventh-day Adventist Church.  Gail was first married in 1968 and her husband died of cancer in 2011.  During her first marriage, Gail had two children.  Gail married James Blais in 2013.  They have no biological children together.

7.      Defendant Ross Hunter is Secretary of the Washington State Department of Children, Youth, and Families.  The Department administers a foster licensing and placement program pursuant to Washington state law.  As Secretary, Defendant Hunter is responsible for administering that program, as well as ensuring that the Department meets it obligations to license foster parents and provide for the care, protection and development of children in state custody.  At all times material to this lawsuit, Defendant Hunter acted within the course and scope of his duties as a public employee, was a state actor, and acted under color of state law.

### III.  JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343, and 1367(a).

9.      This Court has personal jurisdiction over the Defendant.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

/ / /

/ / /

**Complaint for Declaratory and Injunctive Relief - 3**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

# IV.  GENERAL ALLEGATIONS

## The Department's Licensing Requirements for Foster Homes

11.    In Washington, Chapter 110-148 of the Washington Administrative Code ("WAC") governs the licensing requirements for all foster homes licensed directly by the Department.  These requirements are "designed to ensure children who are in foster care are safe, healthy and protected from all forms of child abuse and neglect."  WAC 110-148-1300.

12.    To become a licensed foster parent, a person must complete the prescribed licensing application packet and all supporting documentation within 90 days of submitting the application and background authorization forms to the Department.  WAC 110-148-1315(1).

13.    Under Washington law, to be considered for a foster care license, an applicant must (i) be at least 21 years of age; (ii) have sufficient income to support the applicant without relying on foster care payments; (iii) complete training in First Aid/CPR, HIV/AIDs, and blood borne pathogens; (iv) submit a negative tuberculosis test dated within the last year; and (v) have current pertussis and influenza immunizations.  WAC 110-148-1320; 110-148-1365; 110-148-1375.

14.    In addition, the applicant and all adult household members must pass a background clearance check with the FBI and Washington State Patrol.  WAC 110-148-1320.

**Complaint for Declaratory and Injunctive Relief - 4**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

15.    Before granting a foster license, the Department also assesses both the applicant's "ability to provide a safe home and to provide the quality of care needed by children placed in the home" and whether the applicant meets the Department's training requirements.  WAC 110-148-1320.

16.    An applicant is required to demonstrate "[t]he understanding, ability, physical health, emotional stability, and personality suited to meet the physical, mental, emotional, cultural and social needs of children under their care," that they have "functional literacy," are "able to communicate with the child, the department, health care providers, and other service providers," and "may not use drugs or alcohol . . . in a manner that affects [the applicant's] ability to provide safe care to children"  WAC 110-148-1365.

17.    Of utmost importance, the applicant "must demonstrate they have the ability to furnish children with a nurturing, respectful, and supportive environment." WAC 110-148-1365.

18.    There is nothing under Washington law that authorizes the Department to impose any additional licensing requirements not set forth in the applicable regulations.

19.    There is nothing under Washington law that imposes as a separate licensing requirement that prospective applicants must consider and definitely

/ / /

**Complaint for Declaratory and Injunctive Relief - 5**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1  determine how they will care for hypothetical children 15 years from the date of the

2  foster parents' application.

3      20.    Under Washington law, if the Department determines that a person

4  pursuing licensing as a foster parent "does not possess the character, suitability, or

5  competence to provide care or have unsupervised access to a child, it must provide

6  the reasons for its decision in writing with copies of the records or documents related

7  to its decision to the individual within ten days of making the decision."  RCW

8  74.13.700.

9           **Licensed Foster Parents' Duty Towards Children In Their Care**

10     21.    After the Department grants a foster license, the Department then

11  identifies the "maximum number, age range, and gender of the children that may be

12  placed" in the foster home, based on the foster parent's "skills, the number of care

13  providers, the physical accommodations of [the] home and the needs of the children

14  placed in [the] home."  WAC 110-148-1385.

15     22.    For children placed by the Department, foster parents must "make all

16  reasonable efforts to ensure that children are not abused or neglected."  WAC 110-

17  148-1520.  Foster parents "must provide and arrange for care that is appropriate for

18  the child's age and development including: (a) Emotional support; (b) Nurturing and

19  affection; (c) Structured daily routines and living experiences; and (d) Activities that

20  / / /

**Complaint for Declaratory and Injunctive Relief - 6**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

promote the development of each child. This includes cultural and educational activities in your home and the community."  WAC 110-148-1520.

23.    With regard to infants and young children, the Department specifies the services that are expected of foster parents:

(a)    Hold infants, under the age of six months, for all bottle feedings;

(b)    Hold infants at other times for the purposes of comfort and attention; and

(c)    Allow children plenty of free time outside of a swing, crib or playpen.

WAC 110-148-1520(3).

24.    The Department also specifies other services that foster parents must provide for children in their care.  These include:

(6)    You must follow all state and federal laws regarding nondiscrimination while providing services to children in your care. You must treat foster children in your care with dignity and respect regardless of race, ethnicity, culture, sexual orientation and gender identity.

(7)    You must connect a child with resources that meets a child's needs regarding race, religion, culture, sexual orientation and gender identity. These include cultural, educational and spiritual activities in your home and community including tribal activities within the child's tribal community or extended tribal family. Your licensor, the child's DSHS worker or CPA case manager and/or child's tribal ICW case manager can assist you with identifying these resources.

WAC 110-148-1520.

**Complaint for Declaratory and Injunctive Relief - 7**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

25.    Licensed foster parents also "must ensure that children receive appropriate medical and dental care."  WAC 110-148-1550.

### The Department's Policy to Support LGBTQ+ Identified Children and Youth

26.    In July 2018, the Department enacted Policy 6900, entitled "Supporting LGBTQ+ Identified Children and Youth."

27.    The stated purpose of the policy is "[t]o address the specific needs of children and youth under the age of 21 receiving Children's Administration (CA) services who are developing, discovering, or identifying themselves as lesbian, gay, bisexual, transgender and questioning (LGBTQ+)" and to "provide guidance to assist CA staff in identifying and referring LGBTQ+ children and youth to appropriate and culturally responsive services."

28.    Under this Policy, a caseworker must "[c]onsider the child or youth's LGBTQ+ identity as a factor when making placement decisions," including "[d]etermining, on a case-by-case basis, which placement option would be in the child or youth's best interest for their safety and well-being."

29.    The Policy also mandates that a caseworker "support any youth identifying as transgender and seeking gender affirming medical services.  This includes, but is not limited to: Following the advice of the medical and therapeutic

/ / /

**Complaint for Declaratory and Injunctive Relief - 8**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

professionals working with the youth. Standard medical protocols must be followed."

30.    The Policy further authorizes a caseworker to "[o]btain[] a court order or parent or legal guardian consent before providing consent for a youth to undergo gender affirming related medical care as listed below."

31.    There is nothing in Policy 6900 that applies to the Department's foster parent licensing requirements or that authorizes the Department to impose any of the Policy's caseworker mandates on prospective foster parents.

32.    There is nothing in Policy 6900 that imposes any separate foster parent licensing requirement with which applicants must comply.

33.    There is nothing in Policy 6900 that applies to children who are not within the Department's custody and care, and nothing that applies to hypothetical children who may be in the Department's custody and care 15 years from the date of the prospective foster parents' application.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**Complaint for Declaratory and Injunctive Relief - 9**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1

### Foster Care in Washington

2

3

34.    With around 9,200 children and youths in out-of-home placements, the Department requires thousands of foster homes to care for vulnerable children.[1]

4

5

6

7

35.    Yet in Washington, a growing number of children are removed from their families only to enter a foster care system that cannot even place them in a home. Hundreds of these children spend countless nights in hotels, while others are sent out of state to group facilities with questionable practices.[2]

8

9

10

36.    Like many other jurisdictions, Washington has a foster care crisis caused by too many children in need of the State's care and protection and not enough qualified licensed foster homes in which to place them.

11

/ / /

12

/ / /

13

14

15

16

[1]    https://www.yakimaherald.com/news/local/more-support-coming-for-foster-parents---and-potential/article_a27819b2-a923-5eb7-9a8d-844d2b584699.html

17

18

19

[2]    https://crosscut.com/2020/02/washingtons-foster-care-system-indicts-itself-placing-kids-hotels;    https://www.kuow.org/stories/some-foster-children-have-new-homes-but-bigger-crisis-in-washington-state-remains.

20

/ / /

**Complaint for Declaratory and Injunctive Relief - 10**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

**1**

### The Seventh-day Adventist Church and Family Life

**2**    37.    Both Plaintiffs are observant members of the Seventh-day Adventist

**3** faith.

**4**    38.    The Seventh-day Adventist faith is a conservative Protestant Christian

**5** faith.  The Seventh-day Adventist faith places a strong emphasis on family life.

**6**    39.    Within the family structure, parenting is recognized as both a wonderful

**7** blessing and an incredible challenge.  But Seventh-day Adventists believe that these

**8** challenges provide an opportunity for growth and afford many opportunities for

**9** parents and children to grow and develop into the image of God.

**10**    40.    Seventh-day Adventists believe that parents are to bring up their

**11** children to love and obey the Lord. Parents "must gain a sympathetic understanding

**12** of their [children's] problems, seek to provide for them a Christian social

**13** environment, and spiritually draw near them so [they] can impart the ideals,

**14** inspiration, and power of Christianity." *Seventh-day Adventist Church Manual* (19th

**15** ed. 2015) at 152.[3]

**16**

**17**    _____

[3] The Seventh-day Adventist *Church Manual* is a Scripture-based guide that

**18** describes the operation and function of church organization and governance, and sets

**19** forth many standards of Christian living central to the Seventh-day Adventist faith.

**20**

**Complaint for Declaratory and Injunctive Relief - 11**

41.     As followers of Jesus, the Church strives to treat all people with dignity and respect.  The Bible commands followers of Christ to love everyone.  Created in the image of God, they must be treated with dignity and respect.  This includes people of all sexual orientations – heterosexual, homosexual, or those with gender dysphoria. The bible commands "You shall love your neighbor as yourself" (Mark 12:31).

42.     Seventh-day Adventists believe that Scripture provides principles for guidance and counsel to those who experience incongruity or uncertainty between their biological sex and gender identity.  As with all facets of daily existence, Seventh-day Adventists seek guidance from God through Scripture to determine what is in their best interest and to live according to His will (2 Tim 3:16).

### The Blaises' Efforts to Become Licensed Foster Parents

43.     Gail Blais and her first husband had two children.  Her son, in turn, had five children.  One of his daughters had two children, including a daughter, H.V., who was born in 2019.  H.V. is eight months old.  H.V. and her mother reside in Idaho.

44.     Gail Blais is H.V.'s biological great-grandmother.

45.     In September 2019, shortly after birth and while still in the hospital, H.V. was removed from her biological parents and placed in foster care in Idaho based on concerns for her welfare in the care of her biological mother.

**Complaint for Declaratory and Injunctive Relief - 12**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

46.    In December 2019, the Idaho Department of Health and Welfare – which oversees the Idaho foster and adoptive care program – contacted Gail and James Blais about H.V. and in response, Gail and Jim expressed an interest in adopting H.V. or possibly becoming her foster parents.

47.    In early January 2020, Gail and James Blais heard from Patrick Sager, a Foster Home Licensor with the Washington Department of Children, Youth and Families.  Under Washington law, a Licensor is a Department employee in the Division of Licensed Resources who recommends approvals for foster home licenses.

48.    In response to the interest shown by Gail and James Blais in becoming foster parents, Patrick Sager provided them with information about the Washington foster parent license process and in January 2020 sent them a link for them to take online Caregiver Core Training and secure a certificate of completion.

49.    In addition, the Blaises were contacted by Amber Moody, a Recruiter Peer Mentor, who works with the Department in Eastern Washington to provide support to relative/foster/ adoptive families in Stevens County.

50.    Amber Moody provided the Blaises with additional information about the Caregiver Core Training program, certification classes for CPR training, and foster parent orientation sessions in their area.

/ / /

**Complaint for Declaratory and Injunctive Relief - 13**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

51.    In mid-January 2020, Patrick Sager interviewed the Blaises and performed an inspection of their home.

52.    At the time of the interview, Gail Blais had begun the training mandated by the Department to become a licensed foster parent.  The interview with Gail lasted approximately 90 minutes and the interview with James took roughly one hour.

53.    At the time of the interview, H.V. was four months old.

54.    During Patrick Sager's interviews of Gail and James Blais:

A.    Patrick Sager was aware that both Gail and James Blais are observant members of the Seventh-day Adventist faith.

B.    Patrick Sager asked a number of appropriate questions dealing directly with the Washington foster parent licensing requirements focusing on such things as the Blaises' family history, the manner in which Gail and James had raised their children, communication issues, dietary considerations, and the use of corporal punishment.

C.    In addition to these questions, Patrick Sager also extensively questioned both Gail and James Blais with regard to hypothetical issues related to H.V.'s possible future sexual orientation and gender identity.  These questions included such things as:

i.    How would the Blaises react if H.V. was a lesbian?

/ / /

**Complaint for Declaratory and Injunctive Relief - 14**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

ii.    Would the Blaises allow H.V. to have a girl spend the night at their home as H.V.'s romantic partner?

iii.    If at 15 years old, H.V. wanted to undergo hormone therapy to change her sexual appearance, would the Blaises support that decision and transport her for those treatments?

iv.    If as a teenager, H.V. wanted to dress like a boy and be called by a boy's name, would the Blaises accept her decision and allow her to act in that manner?

55.    Gail and James Blais were surprised and taken aback by these questions.  Given that H.V. was only 4 months old, they and had a difficult time imagining how they would respond to circumstances that may or may not occur 15 years into the future.   Nonetheless, both Gail and James cooperated with the interview and responded to all of the questions openly, honestly and in a manner consistent with their religious beliefs.

56.    Gail and James made clear to Patrick Sager that, as Seventh-day Adventists, they believe it is important and part of their Christian obligation to love and support all.  This duty especially applies to youths who may feel isolated or uncomfortable because of who they are, including those youths who are realizing their sexual orientation or identity.  The Blaises made clear that they would provide

/ / /

**Complaint for Declaratory and Injunctive Relief - 15**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    a supporting and loving home for any child placed under their care – particularly

2    their own great-granddaughter – regardless of how that child may identify.

3    57.    With regard to the specific hypothetical questions relating to possible

4    hormone therapy, the Blaises responded that although they could not support such

5    treatments based on their sincerely-held religious convictions, they absolutely would

6    be loving and supportive of H.V.

7    58.    The Blaises also indicated that, in the unlikely event H.V. may develop

8    gender dysphoria (or any other medical condition) as a teenager or young adult, they

9    would provide her with loving, medically and therapeutically appropriate care that

10   is consistent with both then-accepted medical principles and their beliefs as Seventh-

11   day Adventists and Christians.

12   59.    At the conclusion of the interview, Patrick Sager indicated that, most

13   likely, the Department would not approve the Blaises' application to become foster

14   parents.    According to Patrick Sager, the Blaises' responses to questions about

15   H.V.'s future gender identity were inconsistent with the Department's policy to

16   support LGBQT+ children and youth.

17   60.    In early February 2020, Patrick Sager emailed James Blais and stated

18   that he had been "tasked with ensuring you are provided relevant information and

19   research regarding LGBTQ+ youth in foster care."  Patrick Sager asked James to

20   review these materials so that he might "make a more informed decision about

**Complaint for Declaratory and Injunctive Relief - 16**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    supporting LGBTQ+ youth in foster care." In response, James promised they would

2    review the materials within the coming week.

3    61.    In mid-February, after having read those materials, James and Gail

4    responded to Patrick Sager. They reiterated their sincerely-held religious belief in

5    loving all persons regardless of their sexual orientation or identity. They repeated

6    their commitment to provide a loving and supportive home for any foster child in

7    their care. And they again expressed their conviction – based on their faith – that

8    they could not support hormone treatment for transition purposes. They also stated

9    that they did not think that their religious beliefs were incompatible with providing

10    care for gender dysphoria or any other issue, and committed to providing H.V. the

11    best care and most loving home that they can.

12    62.    The Blaises repeated that they would love nothing more than to

13    welcome H.V. into their home and raise her as their own child, with the same

14    unconditional love they showed to their other children. They asked the Department

15    to approve their application to become foster parents, and offered to meet again in

16    order to further explain their position and beliefs.

17    63.    Patrick Sager emailed Jim and thanked him for his honesty. He also

18    informed Jim "that this is being staffed with additional parties" and that "this will be

19    discussed further."

20    / / /

**Complaint for Declaratory and Injunctive Relief - 17**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

64.    During this same time period (January and February 2020), Gail and James were in contact with the Idaho Department of Health and Welfare about a possible visit with H.V.  They finally were able to travel to Idaho and meet with H.V. in late February.

65.    Soon after Gail and Jim returned from visiting H.V. in Idaho, Patrick Sager called them.  During this telephone call, Patrick Sager asked additional questions concerning H.V.'s possible future sexual orientation and gender identity. These questions included

    A.    If H.V. had a lesbian girlfriend, would the Blaises be willing to have her visit their home and possibly travel with them?

    B.    Would the Blaises find it acceptable if H.V. dressed like a boy?

    C.    Would the Blaises find it acceptable if H.V. wanted to be called by a boy's name?

    D.    If at age 14, a doctor ordered H.V. to undergo hormone therapy to change her sexual appearance, would the Blaises comply with that order?

    E.    If at age 14, H.V. said that if the Blaises did not agree with her having hormone therapy she would leave their home and run away, how would they respond?

Patrick Sager did not ask any questions about any other topics or issues during this follow-up interview session.

**Complaint for Declaratory and Injunctive Relief - 18**

66.    At the time of this telephone interview, H.V. was five months old.

67.    At the conclusion of the interview, Patrick Sager told the Blaises that they should drop their request to become licensed foster parents because their views about handling H.V.'s possible future gender identity issues were inconsistent with the Department's policy.  Patrick Sager further told the Blaises that if they did not withdraw their application, then their responses would be noted in the Department's records and would negatively impact their ability to be licensed foster parents in Washington in the future.

68.    The Blaises refused to change their responses and refused to withdraw their foster parent application.  Patrick Sager indicated that the Department would send its denial letter shortly.  When the Blaises pressed him for a more definite time frame, Patrick Sager said the letter would take about two weeks.

69.    Patrick Sager did not get back to the Blaises as promised, and the Department did not send any letter.  In response to an inquiry from Jim sent one week later, Patrick Sager texted that he did not "have an answer yet.  I am waiting to hear back from someone."

70.    Two weeks later – in mid-March – Patrick Sager again texted Jim, this time asking whether Jim "could meet me and a coworker" the following week.

71.    In an email sent several days later, Patrick Sager explained to Jim that he "wanted to meet with you and my co-worker. . . .  She is a foster care licensor in

**Complaint for Declaratory and Injunctive Relief - 19**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    Spokane.  She also is our LGBTQ+ lead.  I was hoping we all could meet together

2    as she may have additional resources regarding LGBTQ+ that may be of benefit.

3    We felt as a department we wanted to provide another opportunity to hopefully come

4    to a resolution regarding the [Interstate Compact on the Placement of Children]

5    request for H.V."

6        72.    The Blaises agreed to meet with Department representatives and be

7    questioned for a third time.  Once again, the sole focus of the interview questions

8    posed by the representatives of the Department was on the manner in which Jim and

9    Gail would respond to H.V.'s possible future sexual orientation and gender identity

10   when she was a teenager.

11       73.    At the time of this third interview, H.V. was six months old.

12       74.    As they had done during the first two interviews with the Department,

13   both Gail and James cooperated fully during the third interview session, and again

14   responded to all of the questions openly, honestly and in a manner consistent with

15   their religious beliefs.

16       75.    At the end of this third interview, Patrick Sager's co-worker told Jim

17   and Gail that they were at "an impasse" as how to proceed with the Blaises' foster

18   parent license application.

19   / / /

20   / / /

**Complaint for Declaratory and Injunctive Relief - 20**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

76.    Several days later, after hearing nothing from the Department, Jim contacted Patrick Sager and asked whether the Department "will be able to license us for foster care? Please send me your decision in writing ASAP."

77.    On March 30, 2020, Patrick Sager emailed Jim saying only "I don't have an answer at this time. We are in discussion with others about how to proceed and I will get an answer to you as soon as we have information to provide."

78.    On April 5, 2020, Patrick Sager again emailed Jim and again said that the Department still had not made a decision.  According to Mr. Sager, "Licensing division is still discussing with the appropriate chain of command about how to proceed, and will have an answer as soon as possible."  Once again, Patrick Sager stated that he had "been asked to provide you both with a training opportunity that pertains to what we have discussed previously," and provided a link that training. That training consisted of a two-hour course that focused on such topics as "Myths and stereotypes about LGBTQ+ children/youth" and "how to promote the health, safety and well-being of the children/youth in care."

79.    To-date – more than four months after first being in contact with Patrick Sager – the Department has not acted on the Blaises' application to become licensed foster parents and has refused to state when it will make a decision.

80.    The Blaises have completed a portion of their training to become licensed foster parents.  After their first interview with Patrick Sager in January

**Complaint for Declaratory and Injunctive Relief - 21**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    2020, Patrick Sager advised the Blaises not to engage in any preparation that would

2    cost them any money.

3    81.    At no time has the Department ever indicated to either Gail or Jim Blais

4    that they are not qualified to become licensed foster parents in Washington.  To the

5    contrary, Patrick Sager told the Blaises that, but for their answers to questions about

6    H.V.'s hypothetical sexual orientation and gender identity, they were acceptable

7    applicants to become licensed foster parents.

8    82.    At no time has the Department ever indicated to either Gail or Jim Blais

9    that they failed timely to complete the prescribed licensing application packet and

10    all supporting documentation.

11    83.    At no time has the Department ever indicated to either Gail or Jim Blais

12    that they are unable or unwilling to provide the necessary services specified under

13    Washington law that are expected of foster parents with regard to infants like H.V.

14    84.    Contrary to Washington law, if the Department has, in fact, determined

15    that Gail and Jim Blais' application to become licensed foster parents should be

16    denied, the Department has failed provide the reasons for its decision in writing with

17    copies of the records or documents related to its decision to the Blaises within ten

18    days of making the decision.

19    85.    During this period of intransigence by the Department, the Idaho

20    Department of Health and Welfare has placed H.V. in foster care with non-relative

**Complaint for Declaratory and Injunctive Relief - 22**

1  foster parents in Idaho and is moving forward to terminate the parental rights of

2  H.V.'s biological parents.

3      86.    Separate and apart from whether they are able to serve as foster parents

4  for H.V., Gail and Jim Blais are committed to becoming licensed foster parents in

5  Washington.  They have an honest and unwavering desire to help children in need

6  and truly want the opportunity to provide a safe, stable and caring home for children.

7      87.    Jim and Gail Blais are willing to serve as foster parents for children

8  regardless of their race, sex, religion, national origin, ancestry, age, disability,

9  familial status, sexual orientation, or gender identity.

**COUNT I**
**42 U.S.C. § 1983**
**VIOLATION OF THE FIRST AMENDMENT**
**TO THE U.S. CONSTITUTION**
**FREE EXERCISE CLAUSE NOT NEUTRAL**

13     88.    Plaintiffs reallege and incorporate by reference paragraphs 1 through

14  87 and all subparagraphs as if they were fully set forth herein.

15     89.    The Department's refusal to act upon the Blaises' application to

16  become licensed foster parents and refusal to state when it will make a decision is

17  based on the Bliases' sincerely-held religious beliefs.

18     90.    The Department's repeated hypothetical questioning of the Blaises with

19  regard to their attitude towards H.V.'s possible future sexual orientation and gender

20  identity, its insistence that they review "relevant information and research regarding

**Complaint for Declaratory and Injunctive Relief - 23**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1   LGBTQ+ youth in foster care" so that they can "make a more informed decision

2   about supporting LGBTQ+ youth in foster care," and its statements that the Blaises'

3   responses to questions about H.V.'s possible future gender identity were inconsistent

4   with the Department's policy related to supporting LGBQT+ children and youth and

5   that the Department was at an impasse as how to proceed with the Blaises' foster

6   parent license application demonstrate that hostility towards the Blaises and their

7   religious beliefs has been a motivation for the Department's conduct.

8        91.    Gail and Jim Blais are members of the Seventh-day Adventist Church.

9   They follow, and have a sincere religious belief in, the teachings, tenets, beliefs and

10  doctrines of the Church.

11       92.    The Department, through its application and interpretation of the

12  pertinent provisions of Washington law which govern the licensing requirements for

13  all foster homes licensed directly by the Department, has placed a substantial burden

14  on the Blaises' ability to act on their sincerely-held religious beliefs.  In particular:

15       A.    The Department has a clear preference to support any youth

16  identifying as transgender and who choose to seek gender affirming medical

17  services.  That position is antithetical to the Blaises' faith.  In order to become

18  licensed foster parents, the Blaises either must lie about their beliefs or

19  promise to act in a manner contrary to their religious beliefs.

20  / / /

**Complaint for Declaratory and Injunctive Relief - 24**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

B.    The Department is skeptical, if not hostile, towards the Seventh-day Adventist position on sexual orientation and gender dysphoria.  In order to become licensed foster parents, the Blaises either must lie about their beliefs or promise to act in a manner contrary to their religious beliefs.

C.    The Department violates the federal constitution and substantially burdens the Blaises' free exercise of religion by arbitrarily imposing requirements for securing a foster parent license that do not appear anywhere in the pertinent and controlling provisions of Washington law and that are contrary to the Blaises' faith, solely because the Department is hostile to those beliefs.

93.    In short, the Department has placed the Blaises in an intolerable and constitutionally impermissible position:  in order to secure a license from the State of Washington to be foster parents, the State is demanding that they express a position adverse to their religion or act in a manner directly contrary to the religious tenets of their Church.

94.    The Department does not have a compelling reason for its action, and the Department has not selected the means least restrictive of religious exercise in order to further its asserted interests.

95.    The injuries suffered by the Blaises cannot be fully compensated by monetary damages.  Absent injunctive and declaratory relief against the Department,

**Complaint for Declaratory and Injunctive Relief - 25**

the Blaises will continue to suffer irreparable injury which cannot adequately be remedied at law, including but not limited to, the burden on their free exercise of their sincerely-held religious beliefs.

**COUNT II**
**42 U.S.C. § 1983**
**VIOLATION OF THE FIRST AMENDMENT**
**TO THE U.S. CONSTITUTION**
**FREE EXERCISE AND ESTABLISHMENT CLAUSE**
**DENOMINATIONAL PREFERENCE AND DISCRIMINATION**

96.    Plaintiffs reallege and incorporate by reference paragraphs 1 through 95 and all subparagraphs as if they were fully set forth herein.

97.    The Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution prohibit government from officially preferring one religious denomination over another or discriminating against one religious group for its religious beliefs.

98.    The Department is applying and interpreting the pertinent provisions of Washington law which govern the licensing requirements for foster homes licensed directly by the Department in a manner that penalizes the Blaises' religious beliefs as Seventh-day Adventists.  The Department's actions alienate, communicate disapproval of, and impose concrete harms on all prospective foster parents who share the religious beliefs relating to sexual orientation and gender dysphoria expressed by the Blaises as Seventh-day Adventists.

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

99.   The Department's preference for some religious beliefs that are deemed compatible with Department policy and discrimination against the Blaises' beliefs violates the Free Exercise and Establishment Clauses of the First Amendment to the United States Constitution.

100.   The Department does not have a compelling reason for its action, and the Department has not selected the means least restrictive of religious exercise in order to further its asserted interests.

101.   The injuries suffered by the Blaises cannot be fully compensated by monetary damages.  Absent injunctive and declaratory relief against the Department, the Blaises will continue to suffer irreparable injury which cannot adequately be remedied at law, including but not limited to, the burden on their free exercise of their sincerely-held religious beliefs.

**COUNT III
42 U.S.C. § 1983
VIOLATION OF THE FOURTEENTH
AMENDMENT TO THE U.S. CONSTITUTION
EQUAL PROTECTION**

102.   Plaintiffs reallege and incorporate by reference paragraphs 1 through 101 and all subparagraphs as if they were fully set forth herein.

103.   The Equal Protection Clause prohibits discrimination on the basis of religion.

/ / /

**Complaint for Declaratory and Injunctive Relief - 27**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

104. The Department's refusal to act upon the Blaises' application to become licensed foster parents and refusal to state when it will make a decision penalizes the Bliases because of their sincerely-held religious beliefs.

105. The Department's preference for one set of religious beliefs that are deemed compatible with Department policy, and hostility towards and discrimination against the Blaises based on their religious beliefs violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

106. The Department does not have a compelling reason for its action, and the Department has not selected the means least restrictive of religious exercise in order to further its asserted interests.

107. The injuries suffered by the Blaises cannot be fully compensated by monetary damages. Absent injunctive and declaratory relief against the Department, the Blaises will continue to suffer irreparable injury which cannot adequately be remedied at law, including but not limited to, the burden on their free exercise of their sincerely-held religious beliefs.

## **PRAYER FOR RELIEF**

Plaintiffs Gail and James Blais request that the Court enter a judgment in their favor and against Defendant Hunter, Secretary of Washington State Department of Children, Youth and Families for the following:

/ / /

**Complaint for Declaratory and Injunctive Relief - 28**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1. Declaratory relief that the refusal by Defendant and the Department he oversees to act upon the Blaises' application to become licensed foster parents and refusal to state when it will make a decision on their application is unconstitutional;

2. Injunctive relief, requiring Defendant and the Department he oversees to timely act upon the Blaises' application to become licensed foster parents;

3. Injunctive relief, enjoining Defendant and the Department he oversees, along with employees, officers, agents and persons acting on his behalf, from enforcing or threatening to enforce Policy 6900 or any other Department policy, regulation or practice with regard to Defendant's consideration of an application to become licensed foster parents in a manner that conflicts with the applicant's sincerely held religious beliefs concerning sexual orientation or gender identity.

4. Reasonable attorneys' fees and costs of suit under 42 U.S.C. § 1988 or such other authority as may authorize such an action; and

5. Such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 22nd day of May, 2020.

          s/ Jerome R. Aiken                .
JEROME R. AIKEN, WSBA #14647
Attorneys for Plaintiffs
James Blais and Gail Blais
Meyer, Fluegge & Tenney, P.S.
Phone: 509/575-8500 – Fax: 509/575-4676
Email: aiken@mftlaw.com

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

Pending Pro Hac Vice Admission:

                                            s/ Todd R. McFarland          .
TODD R. McFARLAND
General Conference of Seventh-Day Adventists
Attorneys for Plaintiffs
Phone: 301/680-6321; Fax: 301/680-6329
Email: McFarlandT@adventist.org

                                            s/ Andrew G. Schultz         .
ANDREW G. SCHULTZ, NM No. 3090
Rodey, Dickason, Sloan, Akin & Robb, P.A.
Attorneys for Plaintiffs
Phone: 505/765-5900; Fax: 505/768-7395
Email: aschultz@rodey.com

**Complaint for Declaratory and Injunctive Relief - 30**

1

## <u>CERTIFICATE OF TRANSMITTAL</u>

2

3          I hereby certify under penalty of perjury of the laws of the state of Washington that on May 22, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF System and also caused said document to be personally served on the following parties as described below:

4

5

| **For Defendant Washington State Department of Children, Youth & Families:**<br>Ms. Kim Loranz<br>Assistant Attorney General<br>1433 Lakeside Ct., #102<br>Yakima, WA  98901 | ____ via CM/ECF<br> X   via Hand Delivery<br>____ via E-Mail<br>____ via Fax |
|---|---|

6

7

8

9

10          /s  Sheryl A. Jones                            .
          SHERYL A. JONES, Legal Assistant
          Meyer, Fluegge & Tenney, P.S.
          jones@mftlaw.com

11

12

13

14

15

16

17

18

19

20

**Complaint for Declaratory and Injunctive Relief - 31**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500