1  JEFFREY C. GRANT
   Assistant Attorney General
2  CARRIE HOON WAYNO
   Senior Counsel
3  DREW PUGSLEY
   Assistant Attorney General
4  Office of the Attorney General
   Complex Litigation Division
5  800 Fifth Avenue, Suite 2000
   Seattle, WA  98104-3188
6  Telephone:  (206) 332-7099
   Fax:          (206) 447-1963
7  Email:    Jeffrey.Grant@atg.wa.gov
             Carrie.Wayno@atg.wa.gov
8            Drew.Pugsley@atg.wa.gov

**Honorable Salvador Mendoza, Jr.**

9            **UNITED STATES DISTRICT COURT**
             **EASTERN DISTRICT OF WASHINGTON**
10

11  JAMES BLAIS and GAIL BLAIS,          NO. 2:20-cv-00187-SMJ

12                  Plaintiffs,          DEFENDANT'S RESPONSE
                                         TO PLAINTIFFS' MOTION
13      v.                               FOR PRELIMINARY AND
                                         PERMANENT
14  ROSS HUNTER, in his official         INJUNCTION
    capacity of Secretary of Washington
15  State Department of Children, Youth, **NOTED FOR HEARING:
    and Families,                        BY
16                                       VIDEOCONFERENCE:
                    Defendant.           7/16/2020, AT 11:00 A.M.**
17
                                         **WITH ORAL ARGUMENT**
18

19

20

21

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 1

1

TABLE OF CONTENTS

2

I.     INTRODUCTION ................................................................. 3

II.    STATEMENT OF FACTS ................................................... 3

       A.  Introduction ............................................................... 3

       B.  James and Gail Blaises' Application for a Foster Care License ... 4

       C.  LGBTQ+ Children in Foster Care ................................. 7

III.   LEGAL DISCUSSION ......................................................... 9

       A.  Plaintiffs' Request for Injunctive Relief Should Be Denied ......... 9

       B.  Plaintiffs Do Not Have a Constitutional Right to Impose Their Religious Beliefs on Foster Children ......................................... 14

       C.  DCYF Did Not Infringe Plaintiffs' Right to Equal Protection Under the Law ................................................................. 19

IV.    CONCLUSION .................................................................. 22

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1
2
3
4
5

# I.    INTRODUCTION

Defendant Ross Hunter, in his official capacity as the Secretary of Washington State's Department of Children, Youth, and Families (DCYF), respectfully requests that this Court deny Plaintiffs' Motion for Preliminary and Permanent Injunction, ECF No. 3.

6
7
8
9
10

Plaintiffs' request for this extraordinary remedy should be denied because they have failed to demonstrate that (1) there is a likelihood they will succeed on the merits, (2) there is a likelihood they will suffer irreparable harm in the absence of preliminary relief, (3) the balance of equities tips in their favor, and (4) an injunction is in the public interest.

11

# II.    STATEMENT OF FACTS

12

## A.    Introduction

13
14
15
16
17
18
19
20
21

The gravamen of Plaintiffs' Complaint for Declaratory and Injunctive Relief (ECF No. 1), filed on May 22, 2020, alleges that DCYF refused to act on their application to become licensed foster parents and failed to state when it will make a decision, failures they assert are unconstitutional. *See* ECF No. 1 ¶ 2. From this premise, which is no longer accurate because DCYF has since denied their application, Plaintiffs ask this Court to require DCYF to act timely on their application and to enjoin DCYF from enforcing its policies they claim conflict with their "sincerely held religious beliefs concerning sexual orientation or gender identity." ECF No. 1 at 29, ¶¶ 2, 3.

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1    Plaintiffs submitted their application to DCYF in January 2020.

2    Declaration of Patrick Sager (Sager Decl.) ¶ 30. On June 16, 2020, after

3    concluding its thorough investigation, DCYF timely sent them notice of its

4    decision to deny their application for a foster care license. Sager Decl., Ex. 4. As

5    set forth more fully below, DCYF's decision is supported by the facts and the

6    relevant licensing rules, which require that a foster care applicant must provide

7    adequate support related to a child's sexual orientation or gender identity. Wash.

8    Admin. Code § 110-148-1520(6)-(7).

9    **B.    James and Gail Blaises' Application for a Foster Care License**

10   On January 3, 2020, DCYF's Interstate Compact on the Placement of

11   Children (ICPC) Unit received a request from the State of Idaho to consider

12   James and Gail Blais as possible placements for their great granddaughter, H.V.[1]

13   Declaration of Maya Brown (Brown Decl.) ¶ 16. The ICPC, codified in chapter

14   26.34 of the Revised Code of Washington, is an interstate compact between states

15   to help place children in the custody of child welfare agencies with safe

16   caregivers who live in another state. Brown Decl. ¶ 1. The Idaho Department of

17   Health and Welfare also requested that Mr. and Mrs. Blais have a foster home

18   _____

19   [1] H.V. is alternately referred to by Plaintiffs as their great-granddaughter,

20   ECF No. 1, ¶¶ 44, 56, and their granddaughter. ECF No. 4, ¶ 1. The records

21   submitted by the State of Idaho also refer to the child as Plaintiffs' great-

22   granddaughter, and DCYF will refer to her as such.

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 4

1    study, and Mr. and Mrs. Blais thereafter submitted a foster care application on

2    January 10, 2020. Sager Decl. ¶ 30.

3         Mr. and Mrs. Blais's foster care application was assigned to Foster Care

4    Licensor Patrick Sager. Sager Decl. ¶ 30. In the foster care licensing process, the

5    Foster Care Licensor evaluates whether the applicants meet the minimum

6    licensing requirements in chapter 110-148 of the Washington Administrative

7    Code. Sager Decl. ¶ 2. The goal is to provide foster children safe homes that will

8    adequately support them, in the present and in the long term, while they are away

9    from their parents. Declaration of Pamela McKeown (McKeown Decl.) ¶ 8.

10   Mr. Sager inspected Mr. and Mrs. Blais's home on January 17, 2020 and, during

11   an interview that same day, asked a variety questions found in DCYF's Interim

12   Family Home Study Guide. Sager Decl. ¶ 31. Of concern were their responses to

13   questions designed to determine how they would support a foster child who

14   identifies or may identify as lesbian, gay, bisexual, transgender, or questioning

15   (LGBTQ+). Sager Decl. ¶ 31. For example, they indicated that they would be

16   unwilling to support (a) counseling not consistent with their own religious

17   beliefs; (b) hormone therapy, even if it was medically necessary or

18   recommended; (c) boys wearing girls' clothing and vice versa; or (d) using a

19   foster child's preferred name, if it was different from their given name. Sager

20   Decl. ¶ 31. This is significant because licensing rules require that a foster parent

21

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    provide support to foster children, including regarding their sexual orientation

2    and gender identity.

3        Mr. Sager provided Mr. and Mrs. Blais educational information

4    concerning the importance of supporting foster children who identify or may

5    identify as LGBTQ+. Sager Decl. ¶ 34. On March 25, 2020, Mr. Sager and

6    DCYF's Regional LGBTQ+ Lead, Licensor Carissa Stone, met with Mr. and

7    Mrs. Blais to further discuss the importance of foster youth who identify or may

8    identify as LGBTQ+ having safe, supportive, and affirming homes and the

9    trauma foster children endure when they experience family rejection. Sager

10   Decl. ¶ 37; Declaration of Carissa Stone (Stone Decl.) ¶ 12. Although cordial,

11   Mr. and Mrs. Blais reaffirmed that they were unwilling to meaningfully change

12   their positions—they would only provide medical and therapeutic services that

13   were consistent with their religion, even if they were not affirming of a child's

14   sexual orientation or gender identity. Sager Decl. ¶¶ 37-38. Thereafter, Mr. Sager

15   offered Mr. and Mrs. Blais an additional online training opportunity. Sager

16   Decl. ¶ 39.

17       Consistent with its practice when evaluating whether to issue a foster care

18   license, DCYF sent questionnaires to Mr. and Mrs. Blais's five adult children,

19   and received responses from two. Sager Decl. ¶¶ 33, 40. One adult child replied,

20   "I have different religious views than my father and I wouldn't necessarily want

21   that environment for my child for the long term. I raised my [child] that no

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    religion is perfect and not having religion in your life is fine as well. It's

2    ultimately an individual's choice and my father has stringent religious views

3    concerning same-sex marriages, inter-racial marriages and relationships in

4    general." Sager Decl. ¶ 33. This response confirmed Mr. Sager's existing concern

5    about Mr. and Mrs. Blais: that they would not provide adequate support to a foster

6    child in the long term. Sager Decl. ¶ 33.

7          On June 16, 2020, DCYF timely sent Mr. and Mrs. Blais notice of the

8    denial of their foster care license application, which explains DCYF's decision

9    and details their appeal rights. Sager Decl. ¶ 41; Ex. 4.

10   **C.    LGBTQ+ Children in Foster Care**

11         DCYF's support of LGBTQ+ children in its care is empirically based, both

12   in terms of the number of children who identify as such and the significant risks

13   they face when they do not receive adequate family support.

14         A greater percentage of foster children identify as LGBTQ+ than in the

15   general population. In a recent small survey, 10% of Washington foster youth

16   identified as LGBTQ+; other researchers have estimated that as many as 20% to

17   40% of foster youth identify as LGBTQ+. Declaration of Dae Shogren (Shogren

18   Decl.) ¶ 11-13; Declaration of Ross Hunter (Hunter Decl.) ¶¶ 8, 16; Exs. 2, 3. In

19   contrast, only five percent of Washington State's general population identifies as

20   LGBTQ+. Shogren Decl. ¶12.

21

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    Children grow and mature while they are placed with foster parents and a

2    child's needs are not always readily apparent when they are initially placed.

3    Hunter Decl. ¶ 20; McKeown Decl. ¶ 31; Brown Decl. ¶ 14. In a 2015 survey of

4    50 Washington LGBTQ+ foster children, nearly half reported entering foster care

5    for reasons unrelated to their LGBTQ+ identity and, due to their young age when

6    they entered foster care, most of these 23 young people were not aware of their

7    LGBTQ+ identity when they entered foster care. Shogren Decl. ¶ 14, Ex. 2. They

8    reported experiencing mistreatment, rejection, and disrespect as they matured and

9    their identity emerged. *Id.*; *see also* Hunter Decl. Ex. 2.

10    Family rejection poses a significant danger to children who identify as

11    LGBTQ+, and can be life-threatening; in one study, lesbian, gay, and bisexual

12    youth who experienced family rejection were 8.4 times more likely to report

13    having attempted suicide, 5.9 times more likely to report high levels of

14    depression, and 3.4 times more likely to use illegal drugs. Shogren Decl. ¶ 17,

15    Ex. 4 at 346; *see also* Shogren Decl. Ex. 7; Hunter Decl. Ex. 2. Conversely,

16    family acceptance related to a youth's LGBTQ+ identity has a lasting and

17    dramatically protective influence on the health and well-being of those young

18    people. Shogren Decl. ¶ 19, Exs. 5, 8, 10.

19    In recognition of the disparities faced by foster children who identify, or

20    may identify, as LGBTQ+, DCYF adopted Policy 6900 on July 1, 2018. Shogren

21    Decl. ¶¶ 18-20; McKeown Decl. ¶ 23; Brown Decl. ¶ 5. The goal of this Policy

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1    is to provide foster children safe and affirming care so that children who may

2    identify as LGBTQ+ are not discriminated against and maintain emotional and

3    physical health. Shogren Decl. ¶¶ 6, 21, 27; McKeown Decl. ¶ 24. Policy 6900

4    requires DCYF staff to: (a) evaluate whether a foster parent will use and allow

5    children to use a different name, pronoun, and gender that reflects their identity

6    when making decisions and referrals for services; (b) evaluate whether a foster

7    parent will allow children and youth to express their gender identity through

8    clothing, hairstyle, and mannerisms; and, (c) prior to each placement, discuss the

9    caregiver's ability to meet and support the child or youth's needs, including their

10    safety and well-being in regard to the perceived or known LGBTQ+ identity.

11    McKeown Decl. ¶ 23.

12        In order to achieve DCYF's goal of having foster children placed in homes

13    that will support their current and possible future LGBTQ+ identity and to protect

14    them from known and potential harms, DCYF will only license foster parents

15    who can provide safe and affirming homes. Hunter Decl. ¶¶ 16, 21. Doing

16    otherwise denies the humanity and identity of these children. Hunter Decl. ¶ 21.

17        ### III.    LEGAL DISCUSSION

18    **A.    Plaintiffs' Request for Injunctive Relief Should Be Denied**

19        As an initial matter, it should be noted that, although Plaintiffs' motion is

20    styled as one for "preliminary and permanent injunction", their argument is

21    limited to a request for a preliminary, and not a permanent, injunction. As a

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 9

1  consequence, Defendant's Response is limited accordingly.

2    A preliminary injunction is a matter of equitable discretion and is "an

3  extraordinary remedy that may only be awarded upon a clear showing that the

4  plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*,

5  555 U.S. 7, 22, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). A preliminary

6  injunction may only be issued if a party has demonstrated (1) a likelihood of

7  succeeding on the merits, (2) a likelihood of suffering irreparable harm in the

8  absence of preliminary relief, (3) that the balance of equities tips in his or her

9  favor, and (4) that an injunction is in the public interest. *Disney Enters., Inc. v.*

10  *VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017). When the government is a

11  party, the last two factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073,

12  1092 (9th Cir. 2014).

13    Plaintiffs cannot show a likelihood of success on the merits because they

14  (1) lack standing to bring the claims they raise, given that they have failed to

15  exhaust their administrative remedies and their claims are not ripe, (2) have not

16  suffered an injury in fact, (3) have not demonstrated that DCYF has violated their

17  free exercise of religion, and (4) have not been denied equal protection.

18  Likelihood of success on the merits is "the most important" factor; if a party

19  seeking injunctive relief fails to meet this "threshold inquiry," the court need not

20  consider the other factors. *Disney*, 869 F.3d at 856. There are at least five reasons

21  Plaintiffs' claims are unlikely to succeed on the merits.

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1    *First*, Plaintiffs have failed to exhaust their administrative remedies as

2    required by law. As a consequence, their claims are not ripe, nor have they

3    suffered an injury in fact, as demonstrated by Defendant's motion to dismiss.

4    ECF No. 17. Until Plaintiffs exhaust the requisite administrative remedies, their

5    claims are not ripe and this Court is not in a position to address, much less

6    adjudicate, their claims. "[R]ipeness is peculiarly a question of timing, designed

7    to prevent the courts, through avoidance of premature adjudication, from

8    entangling themselves in abstract disagreements." *Stormans, Inc. v. Selecky*

9    (*Stormans I*), 586 F.3d 1109, 1122 (9th Cir. 2009) (internal quotations omitted).

10   The courts' role is to adjudicate actual cases or controversies, not issue advisory

11   opinions or declare rights in a hypothetical case. *Id.*

12   *Second*, Plaintiffs have not suffered an injury in fact. In order to satisfy

13   Article III's "case or controversy" requirement, a plaintiff "must show (1) it has

14   suffered an 'injury in fact' that is (a) concrete and particularized and (b) actual or

15   imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the

16   challenged action of the defendant; and (3) it is likely, as opposed to merely

17   speculative, that the injury will be redressed by a favorable decision." *Friends of*

18   *the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180-81, 120 S.

19   Ct. 693, 145 L. Ed. 2d 610 (2000); *Bassett v. ABM Parking Servs., Inc.*,

20   883 F.3d 776, 779 (9th Cir. 2018). The harm or risk of real harm must actually

21   exist and be real, not abstract. *Bassett*, 883 F.3d at 779.

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 11

1    *Third*, DCYF has not violated Plaintiffs' free exercise of religion. An

2    individual's religious beliefs do not excuse non-compliance with an otherwise

3    valid law prohibiting conduct that the government is free to regulate. *Emp't Div.,*

4    *Dep't of Human Res. of Or. v. Smith*, 494 U.S. 872, 878-79, 110 S. Ct. 1595, 108

5    L. Ed. 2d 876 (1990); *see Church of the Lukumi Babalu Aye, Inc. v. City of*

6    *Hialeah*, 508 U.S. 520, 533-34, 113 S. Ct. 2217, 124 L. Ed. 2d 472 (1993). Laws

7    which incidentally burden religion or religious practice are upheld if they are

8    valid and neutral laws of general applicability rationally related to a legitimate

9    government purpose. *Stormans v. Wiesman* (*Stormans II*), 794 F.3d 1064,

10    1075-76 (9th Cir. 2015). Non-neutral or non-generally applicable laws are subject

11    to strict scrutiny, but otherwise, the laws are reviewed for a rational basis. *Id.* at

12    1076.

13    DCYF's policies, generally, and its actions in this case, specifically, are

14    neutral because they do not operate as a "covert suppression of particular

15    religious beliefs" that were enacted because of, not merely in spite of their

16    impacts on a particular religion or religious belief or practice. *Ashcroft v. Iqbal*,

17    556 U.S. 662, 676-77, 681, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009);

18    *Stormans II*, 794 F.3d at 1077. DCYF's policies apply to all foster parent

19    applications equally, and Plaintiffs do not claim otherwise. Instead of burdened,

20    their religious beliefs are accommodated.

21    *Fourth*, DCYF's policies do not make any distinctions between religious

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1   faiths. "Evidence of different treatment of unlike groups does not support an

2   equal protection claim." *Thornton v. City of St. Helens*, 425 F.3d 1158, 1167-68

3   (9th Cir. 2005). Plaintiffs' equal protection claim fails because they improperly

4   "conflate[e] all persons not injured into a preferred class receiving better

5   treatment than the plaintiff." *Id.* at 1167 (internal quotations omitted).

6       In seeking preliminary injunctive relief, a plaintiff must "demonstrate that

7   irreparable injury is likely in the absence of an injunction." *Winter*, 555 U.S. at

8   22. "Speculative injury does not constitute irreparable injury sufficient to warrant

9   granting a preliminary injunction. A plaintiff must do more than merely allege

10  imminent harm sufficient to establish standing; a plaintiff must *demonstrate*

11  immediate threatened injury as a prerequisite to preliminary injunctive relief."

12  *Caribbean Marine Servs. Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988).

13  Given that Plaintiffs have failed to exhaust their administrative remedies, their

14  claim of harm is, rather than irreparable, speculative, as the administrative appeal

15  process provides a forum for addressing whatever harms they claim to have

16  suffered.

17      *Finally*, it must be observed that the equities weigh heavily against a

18  preliminary injunction. LGBTQ+ children are greatly overrepresented in foster

19  care, and are exposed to significantly increased risk of suicide attempts and

20  thoughts, depression, homelessness, and substance abuse when they do not

21  receive support from their caregivers. Hunter Decl., ¶¶ 16-21. DCYF's decision

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 13

1   to only license foster parents who can provide safe and affirming homes to

2   children who are now or may in the future identify as LGBTQ+ protects children

3   from these known harms.

4   **B.    Plaintiffs Do Not Have a Constitutional Right to Impose Their Religious Beliefs on Foster Children**

5       Plaintiffs challenge the application of DCYF Policy 6900, arguing that the

6   application of the Policy resulted in an infringement on their right to freely

7   exercise their religion and their right to equal protection under the law because

8   they had not received a decision about whether their foster care license would be

9   approved. Their arguments fail because their foster care license and placement

10  approval requests were not denied because of their religion and their right to

11  freely exercise their religion was not infringed by a neutral policy.

12      DCYF's denial of Plaintiffs' foster care license application resulted not

13  from their religious beliefs, but their stated inability to adequately support a foster

14  child, including one who identifies or may identify as LGBTQ+. DCYF has not

15  conditioned a foster care license or its approval under the ICPC on Plaintiffs'

16  adherence to their own personal religious beliefs, but rather on their inability to

17  adequately care for a foster child in their care, including one who is or may

18  identify as LGBTQ+.

19      Foster parents do not have free rein with regard to decision-making for

20  foster children placed with them. Support for a foster child's current or possible

21  future LGBTQ+ identification is but one of the areas foster parents are required

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1    to meet the needs of the child in their care, regardless of the foster parents'

2    personal beliefs, religious or otherwise. *See* Hunter Decl. ¶¶ 8, 18-20; Sager

3    Decl. ¶¶ 10-11; Declaration of Amber Salzer (Salzer Decl.) ¶ 10. Foster parents'

4    decision-making regarding children in their care is limited: they may not impose

5    their religion on a foster child, Wash. Admin. Code § 110-148-1520(7)-(8);

6    McKeown Decl. ¶ 22; Stone Decl. ¶ 5; they must connect a child in their care

7    with any necessary medical care and vaccinations regardless of their personal or

8    religious beliefs, Wash. Admin. Code §§ 110-148-1550, 110-148-1520(6)-(7);

9    Stone Decl. ¶ 5; they may not home school a child in DCYF's custody, Wash.

10   Admin. Code §110-148-1525; and they may not use corporal punishment, Wash.

11   Admin. Code § 110-148-1615.

12        The willingness to support a child who is or may identify as LGBTQ+ is a

13   relevant issue, contrary to Plaintiffs' allegation, because children grow and

14   mature while in foster care—their gender identity and sexual orientation emerges

15   over time, DCYF cannot predict which children will identify as LGBTQ+, and

16   children who identify as LBTQ+ are at significant risk if they do not receive

17   support in their home. Hunter Decl. ¶¶ 17-21; Shogren Decl. ¶¶ 14-15, 17-19;

18   Salzer Decl. ¶¶ 13-14; Stone Decl. ¶¶ 8-9. DCYF denied Plaintiffs' foster care

19   application because they will not provide adequate support to a child who

20   identifies or may identify as LGBTQ+ in the future, as required under Wash.

21

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1    Admin. Code §§ 110-148-1520 and 110-148-1365. Sager Decl. ¶ 41, Ex. 4

2    (license denial letter); *see also* Stone Decl. ¶¶ 10, 14.

3         Plaintiffs are free to exercise their religion; they are not free to impose their

4    religion on foster children in their care.

5         Turning to Plaintiffs' claim that their right to freely exercise their religion

6    is infringed, DCYF's Policy 6900 is neutral both facially and as applied to

7    Plaintiffs because it applies to all foster parent applications regardless of religion.

8    Moreover, the Policy meets the requisite rational basis standard of review, as it

9    rationally effects the government interests in "providing, and the need to provide,

10   foster children a safe and affirming home in order to promote their emotional and

11   physical safety and help them thrive." Hunter Decl. ¶ 8. Plaintiffs' free exercise

12   claim thus fails.

13        An individual's religious beliefs do not excuse "compliance with an

14   otherwise valid law prohibiting conduct that the State is free to regulate." *Smith*,

15   494 U.S. at 878-79. Even an incidental burden on a particular religion or practice

16   can be upheld if the law is a "valid and neutral law of general applicability" and

17   is rationally related to a legitimate government interest. *Stormans II*, 794 F.3d at

18   1075-76 (internal quotations omitted); *see Miller v. Reed*, 176 F.3d 1202, 1207

19   (9th Cir. 1999) (DMV can require applicant to divulge social security number in

20   conflict with plaintiff's religious beliefs). The challenge to Policy 6900 as an

21   infringement on the exercise of religion fails for four reasons.

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 16

1    *First*, Policy 6900 is neutral to religion, in both its text and its

2    implementation. When evaluating whether a governmental policy is neutral to

3    religion, courts examine both the text and operation of the law. *Lukumi*, 508 U.S.

4    at 533-34; *Stormans II*, 794 F.3d at 1075-76. A governmental policy is not

5    facially neutral when, looking at its language or context, it refers to a religious

6    practice without a secular purpose. *Lukumi,* 508 U.S. at 533. A policy operates

7    neutrally so long as it does not target a religious tenet or practice while appearing

8    neutral on its face. *Id.* at 534. Courts must be "'reluctant to attribute

9    unconstitutional motives' to government actors in the face of a plausible secular

10   purpose." *Kreisner v. City of San Diego*, 1 F.3d 775, 782 (9th Cir.1993) (quoting

11   *Mueller v. Allen*, 463 U.S. 388, 394-95, 103 S. Ct. 3062, 77 L. Ed. 2d 721 (1983)).

12   Even a facially neutral governmental policy that disproportionately

13   burdens a religious faith does not automatically lose its neutrality. *Stormans II*,

14   794 F.3d at 1077. "The Free Exercise Clause is not violated even if a particular

15   group, motivated by religion, may be more likely to engage in the proscribed

16   conduct." *Id.* (citing *Reynolds v. United States*, 98 U.S. 145, 166-67,

17   25 L. Ed. 244 (1878)). A policy is not neutral if it operates as a "covert

18   suppression of particular religious beliefs." *Lukumi*, 508 U.S. at 520. But a

19   plaintiff must show more than "awareness of consequences"; it must prove that

20   the law was enacted "because of, not merely in spite of," its impacts on a

21

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1   particular religion or religious belief or practice. *Iqbal*, 556 U.S. at 676-77, 681;

2   *Lukumi*, 508 U.S. at 540.

3       DCYF's Policy 6900's text is neutral as it does not target a particular

4   religion, facially or otherwise. Rather, Policy 6900 "aims to provide guidance to

5   DCYF staff on how DCYF expects them to provide services to children and youth

6   in the child welfare system who are developing, discovering, or identifying

7   themselves as lesbian, gay, bisexual, transgender or questioning (LGBTQ+), and

8   provides guidance to DCYF staff to help children receive appropriate and

9   culturally responsive services." Hunter Decl. ¶ 15. Policy 6900 makes no

10  reference to any religious practice, conduct, or motivation.

11      *Second*, Policy 6900 operates neutrally. There is no evidence that Policy

12  6900 was adopted "because of" the impacts it would have on a particular religious

13  belief. *See Iqbal*, 556 U.S. at 676-77 (plaintiff must plead sufficient facts to show

14  that the governmental agency adopted and implemented policies for the purpose

15  of discriminating on account of religion). Moreover, neither the purposes nor the

16  language of Policy 6900 focus on religion—rather, both focus on providing foster

17  children who identify, or may identify, as LGBTQ+ with a safe and affirming

18  home in order to promote their emotional and physical safety and help them

19  thrive.

20      *Third*, Policy 6900 is generally applicable because it does not selectively

21  impose "burdens only on conduct motivated by religious belief." *Lukumi*,

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 18

508 U.S. at 534. The general applicability inquiry examines whether a governmental policy selectively prohibits religiously motivated conduct while allowing "substantial, comparable secular conduct" that is just as harmful to the law's purposes. *Stormans II*, 794 F.3d at 1079; *see Lukumi*, 508 U.S. at 543. Policy 6900 is generally applicable and contains no exceptions that apply only to secular conduct. It applies to DCYF staff members' interactions with all caregivers for foster children and is rationally related to a legitimate governmental purpose.

*Fourth*, Policy 6900 is a neutral and generally applicable governmental policy which must be upheld against Plaintiffs' free exercise challenge because it is "rationally related to a legitimate governmental purpose." *Stormans II*, 794 F.3d at 1084. Here, these purposes have been clearly identified: avoiding discrimination against children due to their sexual orientation and gender identity and maintaining their emotional and physical safety, Shogren Decl. ¶ 20, and they are being rationally implemented.

This Court should deny Plaintiffs' request for preliminary injunctive relief because they cannot demonstrate that they are likely to prevail on their free exercise claim.

## C.   DCYF Did Not Infringe Plaintiffs' Right to Equal Protection Under the Law

Plaintiffs' equal protection claim fails because all foster care license applicants are expected to provide a safe and supportive home for foster children

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 19

1    who identify or may identify as LGBTQ+ and they cannot demonstrate that any

2    similarly situated applicant was treated differently, for at least two reasons.

3           *First,* because DCYF has not deprived Plaintiffs of any right, rational basis

4    review is appropriate with respect to DCYF's expectation, set forth in Wash.

5    Admin. Code § 110-148-1520(6)-(7), that foster parents support foster children

6    who identify or may identify as LGBTQ+. As Plaintiffs correctly conceded, there

7    is no right or "entitlement to secure a state license to be a foster parent," ECF No.

8    3 at 14, nor do foster parents have a right to care for a particular child. *See H.B.H.*

9    *v. State*, 192 Wash.2d 154, 167, 429 P.3d 484 (2018) ("foster parents have no

10    legally recognized parental interest in the children placed in their homes"). As a

11    matter of state law, a foster care license is not a *right*. The Washington State

12    Legislature declared that the purpose of the foster care licensing program is, in

13    part, to "safeguard the health, safety, and well-being of children, . . . *which is*

14    *paramount over the right of any person to provide care*." Wash. Rev. Code

15    §74.15.010(1) (emphasis added). The Legislature further declared that

16    "Washington has a compelling interest in protecting and promoting the health,

17    welfare, and safety of children[.] . . . [and] no person or agency has a right to be

18    licensed under this chapter to provide care for children." 1995 Wash. Sess. Laws

19    of 1995, 1271-1280.

20           The extensive relevant data and research reviewed by DCYF confirmed

21    that children who identify as LGBTQ+ are overrepresented in foster care, a

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 20

1   child's identity emerges over time, and children who may identify as LGBTQ+

2   require a safe and supportive placement in order to maintain their emotional and

3   physical safety. Hunter Decl. ¶¶ 16-21; Shogren Decl. ¶¶ 12-18. As a result,

4   DCYF justifiably conditions foster care licensure on a foster care applicant's

5   willingness to provide a safe, supportive, and affirming home to foster children

6   who identify or may identify as LGBTQ+. Wash. Admin. Code

7   § 110-148-1520(6)-(7); Hunter Decl. ¶ 21. This basis satisfies rational basis

8   review.

9          *Second*, children in foster care have competing substantive due process

10  rights to be free from unreasonable risk of harm and to have their basic needs

11  met. *See, e.g.*, *Tamas v. Dep't of Soc. and Health Servs.*, 630 F.3d 833, 842 (9th

12  Cir. 2010) ("The Fourteenth Amendment substantive due process clause protects

13  a foster child's liberty interest in social worker supervision and protection from

14  harm inflicted by a foster parent."); *Braam ex rel. Braam v. State*,

15  150 Wash.2d 689, 698-99, 81 P.3d 851 (2003). Protecting children from harm or

16  the risk of harm is a compelling state interest. *See Custody of Smith*,

17  137 Wash.2d 1, 18, 969 P.2d 21 (1998). Requiring foster parents to provide a safe

18  and supportive home to foster children who identify or may identify as LGBTQ+

19  is a narrowly tailored solution that does not infringe upon Plaintiffs' religious

20  freedom and, therefore, survives both rational basis review as well as strict

21  scrutiny.

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 21

## IV.    CONCLUSION

It is respectfully requested, therefore, that this Court deny Plaintiffs'

Motion for Preliminary and Permanent Injunction.

DATED this 22nd day of June 2020.

ROBERT W. FERGUSON
Attorney General


By: _s/_     _Jeffrey C. Grant_
　　　　JEFFREY C. GRANT, WSBA No. 11046
　　　　CARRIE HOON WAYNO, WSBA No. 32220
　　　　DREW PUGSLEY, WSBA No. 48566
　　　　Assistant Attorneys General

　　　　Attorneys for Defendant Ross Hunter
　　　　Office of the Attorney General
　　　　Complex Litigation Division
　　　　800 Fifth Avenue, Suite 2000
　　　　Seattle, WA  98104-3188
　　　　Telephone:   (206) 332-7099
　　　　Fax:           (206) 447-1963
　　　　Email:        Jeffrey.Grant@atg.wa.gov
　　　　　　　　　  Carrie.Wayno@atg.wa.gov
　　　　　　　　　  Drew.Pugsley@atg.wa.gov

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744

1

## CERTIFICATE OF SERVICE

2       I certify under penalty of perjury of the laws of the state of Washington

3  that on June 22, 2020, I caused Defendant's Response to Plaintiffs' Motion for

4  Preliminary and Permanent Injunction to be electronically filed with the Clerk of

5  the Court using the CM/ECF System, which will automatically generate a Notice

6  of Electronic Filing (NEF) to all Parties in this action who are registered users of

7  the CM/ECF System. The NEF for the foregoing specifically identifies recipients

8  of electronic notice.

9      ANDREW G. SCHULTZ     aschultz@rodey.com

10     TODD R. MCFARLAND    mcfarland@gc.adventist.org

11     JEROME R. AIKEN       aiken@mftlaw.com

12

                  By:   _s/  Jeffrey C. Grant_

13                      JEFFREY C. GRANT, WSBA No. 11046
                      CARRIE HOON WAYNO, WSBA No. 32220

14                      DREW PUGSLEY, WSBA No. 48566
                      Assistant Attorneys General

15

                      Attorneys for Defendant

16                      Office of the Attorney General
                      Complex Litigation Division

17                      800 Fifth Avenue, Suite 2000
                      Seattle, WA 98104-3188

18                      Telephone:  (206) 332-7099
                      Fax:        (206) 447-1963

19                      Email:     Jeffrey.Grant@atg.wa.gov
                                Carrie.Wayno@atg.wa.gov

20                                Drew.Pugsley@atg.wa.gov

21

22

DEFENDANT'S RESPONSE TO
PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:20-cv-00187-SMJ - 23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104-3188
(206) 474-7744