JEFFREY C. GRANT
Assistant Attorney General
CARRIE HOON WAYNO
Senior Counsel
DREW PUGSLEY
Assistant Attorney General
Office of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
Telephone: (206) 332-7099
Fax:        (206) 447-1963
Email:      Jeffrey.Grant@atg.wa.gov
            Carrie.Wayno@atg.wa.gov
            Drew.Pugsley@atg.wa.gov

**Honorable Salvador Mendoza, Jr.**

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| JAMES BLAIS and GAIL BLAIS,<br><br>          Plaintiffs,<br><br>v.<br><br>ROSS HUNTER, in his official capacity of Secretary of Washington State Department of Children, Youth, and Families,<br><br>          Defendant. | NO. 2:20-cv-00187-SMJ<br><br>SECOND DECLARATION OF PAMELA MCKEOWN |

Pamela McKeown certifies under penalty of perjury under the laws of Washington and the United States that I am over 18 years of age, competent to testify, have personal knowledge of the information in my declaration, and that the following information is true:

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 1

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1      1.     I am the Senior Foster Care Administrator at the Washington State Department of Children, Youth, and Families (DCYF). My responsibilities include overseeing statewide kinship licensing and kinship home studies for children in out-of-home care, regional licensing to provide higher-end group care for children who need it, and licensing of foster family homes. I directly supervise the Statewide Administrator for Foster Care Licensing and am also responsible for the Area Administrators, Program Administrators, Supervisors, Licensors, and administrative staff through my chain of authority. These professional staff work across the state in various offices. I have overseen licensing of foster family homes for seven years. I am writing this Second Declaration to supplement my previous declaration, which I signed on June 22, 2020, and can be found at ECF No. 23.

2.     DCYF's licensing rules, promulgated in Wash. Admin. Code chapter 110-148, and DCYF's policies and practices do not require licensed foster parents to affirmatively voice agreement with any DCYF rules or policies, or with a foster child's sexual orientation or their gender identity or expression. Nor are foster parents required to voice agreement with the medical or mental health supports identified for a foster child by their medical and mental health care providers or assigned child welfare agency case worker with responsibility to identify services to meet the child's needs. However, foster parents are required to comply with and follow the case plan identified by the child welfare

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 2

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

agency with custody of the foster child in their care. In other words, when a foster child's medical or mental health care providers recommend a service or treatment for that child, or a service or treatment is one that the child welfare agency with custody of the child decides the child needs, regardless of their personal beliefs, a foster parent must be willing to support and help facilitate providing that service or treatment to the child, including when the service or treatment is intended to support the child's sexual orientation or gender identity or expression. Foster parents must also allow the child to act and identify themselves in ways that are consistent with the child's gender identity and sexual orientation regardless of the foster parents' personal beliefs about doing so.

3. When a family becomes involved with the child welfare system and a dependency case is filed in state court, DCYF assigns a case worker to the family. The case worker's primary responsibility is to help the child remain safely in their parents' home, or if the child has to be removed to protect their safety, to safely reunify the family if possible. DCYF case workers accomplish this by identifying and referring the parents to services to help them correct parental deficiencies that led to removal of their child and by meeting with the child at least monthly to ensure the child is safe; receiving adequate education and daily care; assessing medical, mental health and dental treatment as needed; and otherwise having their needs meet.

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 3

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

4. When a Washington dependency court has removed a child from their parents' care, the court may place them in one of three settings: with an identified relative, with another suitable person who has a pre-existing relationship with the child or family, or in a DCYF-licensed foster home or facility. Regardless of where the child is placed, the DCYF case worker assigned to the child works with the child, their family, the court, and other partners to ensure the child's needs are met. Foster parents participate in this process by providing information about the child and notifying the child's case worker of new developments with the child, whether positive or negative. But DCYF formulates the child's case plan based on the parents' and court's decisions, not the foster parents' decisions about the child. And, regardless of what a foster child's foster parents personally believe about the child's case plan, the foster parents must help implement the case plan that DCYF and the dependency court has decided is in the child's best interests.

5. Foster parents are expected primarily to provide a *temporary* home that is safe and judgment-free, even if they do not personally agree with DCYF's recommendations or the dependency court's plan for the child. This expectation applies in a number of different areas. Foster parents are expected to follow the child's educational plan, even if they personally disagree with it. Wash. Admin. Code § 110-148-1525(1)(a). Foster parents are expected to follow the court-ordered plan for the child to visit with their parents, even if they personally

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 4

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

disagree with it. Foster parents must consult with the foster child's DCYF case worker before making changes to the child's appearance such as body piercings or major changes to the child's hair style or color. Wash. Admin. Code § 110-148-1520(5). Foster parents must follow and not interfere with a foster child's identified permanent plan, even if they personally disagree with that plan. Wash. Admin. Code § 110-148-1520(11). This means that if foster parents want to adopt a child, but the court orders the child to return to their parents' home, the foster parents must implement that plan.

6. Each of these expectations are based on what is in the foster child's best interests, as determined by the dependency court with jurisdiction over the child and based on recommendations from the child's parents, guardians ad litem and court appointed special advocates (CASAs), and the child welfare agency responsible for the child. The foster parents play a role in this decision-making by informing the court and others about how a foster child is doing but, as I explained in my previous declaration, licensing requirements are designed to ensure that children who are in foster care are safe and healthy while their parents work toward reunification. Wash. Admin. Code § 110-148-1300.

7. Since foster parents receive only *temporary* placement of foster children who typically both have legal parents with constitutional rights and are in the legal custody of a child welfare agency, foster parents are not permitted to impose their religion or their other values on the children in their care. For

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 5

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

example, foster children must be vaccinated (unless their legal parents disagree and the court orders otherwise) even if the foster parents' religion does not support vaccinations. Foster children must also receive blood transfusions and other medically indicated treatment, as agreed by the child's medical providers, even if the foster parents' religious beliefs do not align with a particular course of treatment.

8. Foster parents are expected to be accepting and affirming of the children in their care. However, in order to do so, foster parents are not asked or required to change their religious beliefs, alter their own religious practices, or voice agreement with the child's case plan.

9. Additionally, when deciding whether to issue a license to foster care applicants such as Mr. and Mrs. Blais, DCYF considers their ability to care for a hypothetical child because a foster care license is not tied to one specific child. Rather, if granted a foster care license, a licensee may accept any child placed into their home for care away from their parents. Thus, DCYF's licensing standards are based on what foster care practices will ensure that the maximum number of safe and supportive foster homes are available to all children who require care. Moreover, as the research summarized in and attached to the Declaration of Dae Shogren demonstrates, sexual orientation, gender identity, and gender expression are fluid concepts that may emerge early in life or may not emerge until later. Decl. of Dae Shogren, ECF No. 26. DCYF must be sure that

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 6

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

1  foster homes will support a child's identity at all times and can follow the child's case plan now and in the future.

10.  In contrast, when DCYF is asked to approve the placement of a foster child with a specific unlicensed relative or other suitable person, or considers whether to make a placement of a child in DCYF's custody with an already licensed foster home, it does so by deciding whether the home in question can meet the needs identified for that child. But here, DCYF did not receive a request to approve the placement of H.V. with unlicensed relatives, a request that would have necessitated a decision that was more tailored to H.V.'s needs specifically. Instead, as indicated in the Declaration of Maya Brown (Brown Decl.), the State of Idaho requested that the Blaises be approved for a foster care license, and the Blaises submitted a foster care license application. Brown Decl., ECF No. 22, ¶ 16; Declaration of Patrick Sager (Sager Decl.), ECF No. 25, ¶ 30. Thus, DCYF was charged with evaluating whether the Blaises met the foster care licensing requirements generally, and not just whether they could meet the needs of H.V. specifically.

//
//
//
//
//

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 7

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

11. As indicated in Patrick Sager's declaration, DCYF denied the Blaises' foster care license application because they could not support the case plan and needs of foster children, including with regard to the children's sexual orientation and gender identity, as required by Wash. Admin. Code §§ 110-148-1520, and 110-148-1365. Sager Decl., ECF No. 25, ¶ 41, Ex. 4. They were notified of this decision by certified mail on June 16, 2020. Their deadline to appeal this decision was July 17, 2020, and they did not do so. As such, the denial of the Blaises' foster care application is a final DCYF decision.

DATED this 7th day of August 2020 at Arlington, Washington.

_____
PAMELA MCKEOWN
Senior Foster Care Administrator
Washington State Department of Children, Youth, and Families

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 8

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
(206) 474-7744

# CERTIFICATE OF SERVICE

I certify under penalty of perjury of the laws of the state of Washington and the United States that on August 10th, 2020, I caused the Second Declaration of Pamela McKeown to be electronically filed with the Clerk of the Court using the CM/ECF System, which will automatically generate a Notice of Electronic Filing (NEF) to all Parties in this action who are registered users of the CM/ECF System. The NEF specifically identifies recipients of electronic notice.

| | |
|---|---|
| JEROME R. AIKEN | aiken@mftlaw.com |
| TODD R. MCFARLAND | mcfarlandt@gc.adventist.org |
| ANDREW G. SCHULTZ | aschultz@rodey.com |
| DANIEL J. SHIH | dshih@susmangodfrey.com |
| RYAN C. CASTLE | ryan@ryancastlelawfirm.com |

By:  s/ Jeffrey C. Grant
JEFFREY C. GRANT, WSBA No. 11046
CARRIE HOON WAYNO, WSBA No. 32220
DREW PUGSLEY, WSBA No. 48566
Assistant Attorneys General

Attorneys for Defendant Ross Hunter
Office of the Attorney General
800 Fifth Ave., Suite 2000
Seattle, WA 98104-3188
Telephone:   (206) 332-7099
Fax:   (206) 447-1963
Email:   Jeffrey.Grant@atg.wa.gov
Carrie.Wayno@atg.wa.gov
Drew.Pugsley@atg.wa.gov

SECOND DECLARATION OF
PAMELA MCKEOWN
NO. 2:20-cv-00187-SMJ - 9

ATTORNEY GENERAL OF WASHINGTON
800 Fifth Ave., Suite 2000
Seattle, WA  98104-3188
(206) 474-7744