1

JEROME R. AIKEN (WSBA NO. 14647)
Meyer, Fluegge & Tenney, P.S.            **Honorable Salvador Mendoza, Jr.**
230 S. Second Street / P.O. Box 22680
Yakima, WA 98907-2680
Phone: (509) 575-8500
Email: aiken@mftlaw.com

2

3

4

5

Attorneys for Plaintiffs James Blais and Gail Blais

6

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF WASHINGTON

7

8

| | |
|---|---|
| JAMES BLAIS and GAIL BLAIS, on behalf of themselves and all others similarly situated, | ) ) ) ) |
| Plaintiffs, | ) ) ) |
| vs. | ) ) ) ) |
| ROSS HUNTER, in his official capacity of Secretary of Washington State Department of Children, Youth and Families, | ) ) ) ) ) |
| Defendant. | ) |

NO. 20-CV-00187-SMJ

SECOND AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY RELIEF AND PRELIMINARY AND PERMANENT INJUNCTION

9

10

11

12

13

14

15

16

James and Gail Blais, individually and on behalf of all others similarly

17

situated, bring the following action for declaratory relief and preliminary and

18

permanent injunction.

19

20

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 1**

1

## I. <u>INTRODUCTION</u>

2    1.    James and Gail Blais are residents of the state of Washington who

3    wish to foster, and eventually adopt, their great-granddaughter, H.V., who has been

4    removed from her mother's custody by the state of Idaho.

5    2.    As part of the process to secure a foster parent license overseen by the

6    Washington State Department of Children, Youth and Families, headed by

7    Defendant Ross Hunter (collectively, the Department), the Department conducted a

8    home study of the Blaises.

9    3.    The Blaises proved qualified to be foster parents in every respect

10    except one.

11    4.    During the home study, the Blaises were asked how they would

12    support a hypothetical foster child who might in the future develop or identify as

13    lesbian, gay, bisexual, transgender, or questioning (LGBTQ+).

14    5.    The Blaises responded that they would love and support the child, but

15    – consistent with their sincerely held religious beliefs – they could not presently

16    affirm that they would agree to call H.V. by a name other than her legal name, use

17    pronouns that are inconsistent with H.V's birth sex, or support the child in

18    undergoing counseling or medical procedures to transition to the opposite sex.

19

20

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 2**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

6.      The Department repeatedly pressed the Blaises to get "educated" on this issue, to change their views, and, after the Blaises still declined, the Department denied their application, thereby barring them from providing any foster care services ever, including for their own great-granddaughter.

7.      The Blaises are not unique.  The Department has denied applications for foster care licenses to other well-qualified individuals on the basis that their sincerely-held religious beliefs did not comport with the Department's LGBTQ+ policies.  The Department demanded that these individuals, like the Blaises, make a blatantly unconstitutional choice: abandon their sincerely-held religious beliefs or lose the opportunity to be considered as foster parents.

8.      The Department's actions are subject to strict scrutiny under federal law, and because the Department has other ways to pursue its alleged interests without completely barring the Blaises and other individuals from serving as foster parents, the Department's actions cannot survive that inquiry.

9.      On behalf of themselves and others similarly situated, the Blaises thus seek a declaratory judgment and injunctive relief confirming that Defendant violated their rights under the Free Exercise and Free Speech Clauses of the First Amendment and under the Substantive Due Process Clause of the Fourteenth Amendment.

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 3**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    10.    This action arises under the provisions of the First and Fourteenth

2    Amendments to the United States Constitution pursuant to 42 U.S.C. § 1983.

3    ## II. **THE PARTIES**

4    11.    James Blais is a resident and domicile of the State of Washington. He

5    is an observant and practicing member of the Seventh-day Adventist Church. He

6    has been married to Gail Blais since 2013.

7    12.    Gail Blais is a resident and domicile of the State of Washington. She

8    is an observant and practicing member of the Seventh-day Adventist Church.  Gail

9    was previously married from 1968 to 2011, when her first husband died of cancer.

10    She has two children from her first marriage.  The Blaises have no biological

11    children together.

12    13.    Defendant Ross Hunter is Secretary of the Washington State

13    Department of Children, Youth, and Families. The Department administers a foster

14    licensing and placement program pursuant to Washington state law. As Secretary,

15    Defendant Hunter is responsible for administering that program, as well as

16    ensuring that the Department meets it obligations to license foster parents and

17    provide for the care, protection and development of children in state custody. At all

18    times material to this lawsuit, Defendant Hunter acted within the course and scope

19

20
**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 4**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

of his duties as a public employee, was a state actor, and acted under color of state law.

## III. JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1367(a).

15.    This Court has personal jurisdiction over Defendant.

16.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

## IV. GENERAL ALLEGATIONS

### The Blaises and their Religious Beliefs

17.    The Blaises are observant members of the Seventh-day Adventist faith.

18.    The Seventh-day Adventist faith is a Protestant Christian faith that places a strong emphasis on family life.

19.    Within the family structure, parenting is recognized as both a wonderful blessing and an incredible challenge. But Seventh-day Adventists believe that these challenges provide an opportunity for growth and afford many opportunities for parents and children to grow and develop into the image of God.

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 5**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

20.    Seventh-day Adventists believe that parents are to bring up their children to love and obey the Lord. Parents "must gain a sympathetic understanding of their [children's] problems, seek to provide for them a Christian social environment, and spiritually draw near them so [they] can impart the ideals, inspiration, and power of Christianity." *Seventh-day Adventist Church Manual* (19th ed. 2015) at 152.[1]

21.    As followers of Jesus, the Church strives to treat all people with dignity and respect. The Bible commands followers of Christ to love everyone. Created in the image of God, they must be treated with dignity and respect. This includes people of all sexual orientations and gender identities. The bible commands "You shall love your neighbor as yourself" (Mark 12:31).

22.    Seventh-day Adventists believe that Scripture provides principles for guidance and counsel to those who experience incongruity or uncertainty between their biological sex and gender identity. As with all facets of daily existence, Seventh-day Adventists seek guidance from God through Scripture to determine what is in their best interest and to live according to His will (2 Tim 3:16).

---

[1] The Seventh-day Adventist *Church Manual* is a Scripture-based guide that describes the operation and function of church organization and governance, and sets forth many standards of Christian living central to the Seventh-day Adventist faith.

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 6**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

23.    Seventh-day Adventists believe that Scripture provides principles for guidance and counsel to those who experience incongruity or uncertainty between their biological sex and gender identity. As with all facets of daily existence, Seventh-day Adventists seek guidance from God through Scripture to determine what is in their best interest and to live according to His will (2 Tim 3:16).

### The Blaises' Desire to Become Licensed Foster Parents

24.    Gail Blais and her first husband had two children. Her son, in turn, had five children. One of his daughters had two children, including a daughter, H.V. Gail Blais is thus H.V.'s biological great-grandmother.

25.    H.V. was born in September 2019 in Idaho.

26.    Shortly after her birth, and while still in the hospital, H.V. was removed from her biological parents and placed in foster care in Idaho based on concerns for her welfare.

27.    In December 2019, the Idaho Department of Health and Welfare—which oversees the Idaho foster and adoptive care program—contacted the Blaises about H.V. and, in response, the Blaises expressed an interest in fostering and potentially adopting H.V.

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1

## The Department's Licensing Requirements for Foster Homes

2  28.   In Washington the licensing requirements for foster homes are

3  governed by Chapter 110-148 of the Washington Administrative Code. These

4  requirements are "designed to ensure children who are in foster care are safe,

5  healthy and protected from all forms of child abuse and neglect." WAC 110-148-

6  1300.

7  29.   An applicant must (i) be at least 21 years of age; (ii) have sufficient

8  income to support the applicant without relying on foster care payments; (iii)

9  complete training in First Aid/CPR, HIV/AIDs, and blood borne pathogens; (iv)

10  submit a negative tuberculosis test dated within the last year; and (v) have current

11  pertussis and influenza immunizations. WAC 110-148-1320; 110-148-1365; 110-

12  148-1375.

13  30.   In addition, the applicant and all adult household members must pass

14  a background clearance check with the FBI and Washington State Patrol. WAC

15  110- 148-1320.

16  31.   Before granting a foster license, the Department also assesses both the

17  applicant's "ability to provide a safe home and to provide the quality of care

18  needed by children placed in the home," as well as whether the applicant meets the

19  Department's training requirements. WAC 110-148-1320.

20

**Second Amended Class Action Complaint for
Declaratory Relief and Preliminary and
Permanent Injunction - 8**

32. An applicant is required to demonstrate "[t]he understanding, ability, physical health, emotional stability, and personality suited to meet the physical, mental, emotional, cultural and social needs of children under their care," that they have "functional literacy," are "able to communicate with the child, the department, health care providers, and other service providers," and "may not use drugs or alcohol . . . in a manner that affects [the applicant's] ability to provide safe care to children" WAC 110-148-1365.

33. Of utmost importance, applicants "must demonstrate they have the ability to furnish children with a nurturing, respectful, and supportive environment." WAC 110-148-1365.

34. There is nothing under Washington law that authorizes the Department to impose any additional licensing requirements not set forth in the applicable regulations.

35. There is nothing under Washington law that imposes as a separate licensing requirement that prospective applicants must consider and definitively determine how they will care for a hypothetical child at some point in the distant future.

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

**Licensed Foster Parents' Duty Towards Children In Their Care**

36.    After a home has been licensed, the Department then identifies the "maximum number, age range, and gender of the children that may be placed" in the foster home, based on the foster parent's "skills, the number of care providers, the physical accommodations of [the] home and the needs of the children placed in [the] home." WAC 110-148-1385.

37.    For children placed by the Department, foster parents must "make all reasonable efforts to ensure that children are not abused or neglected." WAC 110-148-1520. Foster parents "must provide and arrange for care that is appropriate for the child's age and development including: (a) Emotional support; (b) Nurturing and affection; (c) Structured daily routines and living experiences; and (d) Activities that promote the development of each child. This includes cultural and educational activities in your home and the community." WAC 110-148-1520.

38.    With regard to infants and young children, the Department specifies that foster parents "must: (a) Hold infants, under the age of six months, for all bottle feedings; (b) Hold infants at other times for the purposes of comfort and attention; and (c) Allow children plenty of free time outside of a swing, crib or playpen." WAC 110-148-1520(3).

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 10**

39.    The Department also specifies that foster parents "must follow all state and federal laws regarding nondiscrimination while providing services to children in your care. You must treat foster children in your care with dignity and respect regardless of race, ethnicity, culture, sexual orientation and gender identity." WAC 110-148-1520(6).

40.    Foster parents similarly "must connect a child with resources that meets a child's needs regarding race, religion, culture, sexual orientation and gender identity. These include cultural, educational and spiritual activities in your home and community including tribal activities within the child's tribal community or extended tribal family." WAC 110-148-1520(7). The child's social worker or case manage is tasked to assist "with identifying these resources." *Id.*

41.    Licensed foster parents also "must ensure that children receive appropriate medical and dental care." WAC 110-148-1550.

### The Department's Policy to Support LGBTQ+ Children and Youth

42.    In July 2018, the Department enacted Policy 6900, entitled "Supporting LGBTQ+ Identified Children and Youth."

43.    The Policy explicitly "applies to [Department] staff," and does not address the extent or manner in which it applies to foster families.

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 11**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

44.    The Policy's stated purpose is "[t]o address the specific needs of children and youth under the age of 21 receiving Children's Administration (CA) services who are developing, discovering, or identifying themselves as lesbian, gay, bisexual, transgender and questioning (LGBTQ+)" and to "provide guidance to assist CA staff in identifying and referring LGBTQ+ children and youth to appropriate and culturally responsive services."

45.    Under the Policy, a caseworker must "[c]onsider the child or youth's LGBTQ+ identity as a factor when making placement decisions," including "[d]etermining, on a case-by-case basis, which placement option would be in the child or youth's best interest for their safety and well-being." (Emphasis added.)

46.    The Policy also mandates that a caseworker "[s]upport any youth identifying as transgender and seeking gender affirming medical services. This includes, but is not limited to: Following the advice of the medical and therapeutic professionals working with the youth. Standard medical protocols must be followed."

47.    The Policy further authorizes a caseworker to "[o]btain[] a court order or parent or legal guardian consent before providing consent for a youth to undergo gender affirming related medical care" such as "Hormone blockers,"

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 12**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1   "Hormone Replacement Therapy (HRT)," or "Behavior Health Services (Gender

2   Dysphoria)."

3          48.    There is nothing in Policy 6900 that applies to the Department's foster

4   parent licensing requirements or that authorizes the Department to impose any of

5   the Policy's caseworker mandates on prospective foster parents.

6          49.    There is nothing in Policy 6900 that imposes any separate foster

7   parent licensing requirement with which applicants must comply.

8          50.    There is nothing in Policy 6900 that applies to children who are not

9   within the Department's custody and care, and nothing that applies to hypothetical

10  children who may be in the Department's custody and care sometime in the future

11  from the date of the prospective foster parents' application.

12                          **<u>Foster Care in Washington</u>**

13         51.    As of June 2018, Washington had approximately 9,200 children and

14  youth in out-of-home placements, with only about 5,110 available foster homes.

15         52.    Thus, a growing number of children are removed from their families

16  only to enter a foster care system that cannot even place them in a home. Hundreds

17  of these children spend countless nights in hotels, while others are sent out of state

18  to group facilities with questionable practices.

19

20  **Second Amended Class Action Complaint for**
    **Declaratory Relief and Preliminary and**
    **Permanent Injunction - 13**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

53. In short, Washington has a foster care crisis caused by too many children in need of the State's care and protection and not enough qualified licensed foster homes in which to place them.

### The Department's Family Home Study Guide

54. In January 2020, the same month the Blaises applied for a license, the Department revised its "Family Home Study Guide" and its related "Family Home Study Questions and Prompts," which identifies questions Foster Care Licensors can ask families in conducting a home study.

55. Although the Department enacted Policy 6900 in 2018, the earlier versions of these guidance documents did not contain questions about foster children who identify, or may at some time in the future identify, as LGBTQ+.

56. The guide does not suggest how a foster-care applicant must respond to these questions to qualify for the license.

57. The document specifically states that its purpose is only "to provide workers with a framework for interviews. The purpose of this guide is to provide workers with a framework for interviews. This guide is not intended to be the only source of questions or topics during the process, as the worker's responsibility is to complete a holistic assessment to ensure that foster family homes are safe and suitable for foster children."

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 14**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1

### The Blaises' Home Study

2      58.    In early January 2020, around the same time that the new "Family

3   Home Study Questions & Prompts" issued, the Blaises heard from Patrick Sager,

4   the Foster Home Licensor assigned to conduct their home study.

5      59.    After the Blaises confirmed their interest in becoming foster parents,

6   Mr. Sager provided them with information about the Washington foster-parent

7   license process and that same month sent a link where they could take online

8   Caregiver Core Training and secure a certificate of completion.

9      60.    The Blaises were also contacted by Amber Moody, a Recruiter Peer

10  Mentor, who works with the Department in Eastern Washington to provide support

11  to relative/foster/ adoptive families in Stevens County.

12     61.    Amber Moody provided the Blaises with additional information about

13  the Caregiver Core Training program, certification classes for CPR training, and

14  foster parent orientation sessions in their area.

15     62.    In mid-January 2020, Mr. Sager interviewed the Blaises and

16  performed an inspection of their home.

17     63.    At the time of the interview, Gail Blais had begun the training

18  mandated by the Department to become a licensed foster parent. The interview

19

20  **Second Amended Class Action Complaint for**
    **Declaratory Relief and Preliminary and**
    **Permanent Injunction - 15**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    with Gail lasted approximately 90 minutes and the interview with James took

2    roughly one hour.

3        64.    At the time of the interview, H.V. was four months old.

4        65.    During Mr. Sager's interviews of Gail and James:

5        a.    Mr. Sager was aware that both Gail and James are observant

6    members of the Seventh-day Adventist faith.

7        b.    Mr. Sager asked a number of appropriate questions dealing

8    directly with the Washington foster parent licensing requirements focusing

9    on such things as the Blaises' family history, the manner in which Gail and

10    James had raised their children, communication issues, dietary

11    considerations, and the use of corporal punishment.

12        c.    In addition to these questions, Mr. Sager also extensively

13    questioned both Gail and James with regard to hypothetical issues related to

14    H.V.'s possible future sexual orientation and gender identity.

15        66.    These questions included such things as:

16        a.    How would the Blaises react if H.V. was a lesbian?

17        b.    Would the Blaises allow H.V. to have a girl spend the

18    night at their home as H.V.'s romantic partner?

19

20    **Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 16**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

  c.  If at 15 years old, H.V. wanted to undergo hormone therapy to change her sexual appearance, would the Blaises support that decision and transport her for those treatments?

  d.  If, as a teenager, H.V. wanted to dress like a boy and be called by a boy's name, would the Blaises accept her decision and allow her to act in that manner?

67. Gail and James were both surprised and taken aback by these questions. Given that H.V. was only 4 months old, they had a difficult time imagining how they would respond to circumstances that may or may not occur 15 years into the future. Nonetheless, both Gail and James cooperated with the interview and responded to all of the questions openly, honestly, and in a manner consistent with their religious beliefs.

68. Gail and James made clear to Mr. Sager that, as Seventh-day Adventists, they believe it is important and part of their Christian obligation to love and support all. This duty especially applies to youth who may feel isolated or uncomfortable because of who they are, including those who are realizing their sexual orientation or identity. The Blaises made clear that they would provide a supporting and loving home for any child placed under their care—particularly their own great-granddaughter—regardless of how that child might identify.

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 17**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    69.    With regard to the specific hypothetical questions relating to possible

2    hormone therapy, the Blaises responded that although they could not support such

3    treatments based on their sincerely-held religious convictions, they absolutely

4    would be loving and supportive of H.V.

5    70.    The Blaises also indicated that, in the unlikely event H.V. may

6    develop gender dysphoria (or any other medical condition) as a teenager or young

7    adult, they would provide her with loving, medically and therapeutically

8    appropriate care that is consistent with both then-current medical principles and

9    their beliefs as Seventh-day Adventists and Christians.

10    71.    At the conclusion of the interview, Mr. Sager indicated that, most

11    likely, the Department would not approve the Blaises' application to become foster

12    parents. According to Mr. Sager, the Blaises' responses to questions about H.V.'s

13    future gender identity were inconsistent with the Department's policy to support

14    LGBQT+ children and youth.

15    72.    In early February 2020, Mr. Sager emailed James Blais and stated that

16    he had been "tasked with ensuring you are provided relevant information and

17    research regarding LGBTQ+ youth in foster care." Mr. Sager asked James to

18    review these materials so that he might "make a more informed decision about

19

20    **Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 18**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1  supporting LGBTQ+ youth in foster care." In response, James promised they

2  would review the materials within the coming week.

3      73.    In mid-February, after having read those materials, James and Gail

4  responded to Mr. Sager. They reiterated their sincerely-held religious belief in

5  loving all persons regardless of their sexual orientation or identity. They repeated

6  their commitment to provide a loving and supportive home for any foster child in

7  their care. And they again expressed their conviction—based on their faith—that

8  they could not support hormone treatment for transition purposes. They also stated

9  that they did not think that their religious beliefs were incompatible with providing

10  care for gender dysphoria or any other issue, and committed to providing H.V. the

11  best care and most loving home that they can.

12      74.    The Blaises repeated that they would love nothing more than to

13  welcome H.V. into their home and raise her as their own child, with the same

14  unconditional love they showed to their other children. They asked the Department

15  to approve their application to become foster parents, and offered to meet again in

16  order to further explain their position and beliefs.

17      75.    Mr. Sager emailed James and thanked him for his honesty. He also

18  informed James "that this is being staffed with additional parties" and that "this

19  will be discussed further."

20  **Second Amended Class Action Complaint for
Declaratory Relief and Preliminary and
Permanent Injunction - 19**

1    76.    During this same time period (January and February 2020), Gail and

2  James were in contact with the Idaho Department of Health and Welfare about a

3  possible visit with H.V. They finally were able to travel to Idaho and meet with

4  H.V. in late February.

5    77.    Soon after Gail and James returned from visiting H.V. in Idaho, Mr.

6  Sager called them. During this telephone call, Mr. Sager asked additional questions

7  concerning H.V.'s possible future sexual orientation and gender identity. These

8  questions included

9        a.    If H.V. had a lesbian girlfriend, would the Blaises be willing to

10       have her visit their home and possibly travel with them?

11       b.    Would the Blaises find it acceptable if H.V. dressed like a boy?

12       c.    Would the Blaises find it acceptable if H.V. wanted to be called

13       by a boy's name?

14       d.    If at age 14, a doctor ordered H.V. to undergo hormone therapy

15       to change her sexual appearance, would the Blaises comply with that order?

16       e.    If at age 14, H.V. said that if the Blaises did not agree with her

17       having hormone therapy she would leave their home and run away, how

18       would they respond?

19

20  **Second Amended Class Action Complaint for**
    **Declaratory Relief and Preliminary and**
    **Permanent Injunction - 20**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

78.   Mr. Sager did not ask any questions about any other topics or issues during this follow-up interview session. '

79.   At the time of this telephone interview, H.V. was five months old.

80.   At the conclusion of the interview, Mr. Sager told the Blaises that they should drop their request to become licensed foster parents because their religious views about handling H.V.'s possible future gender identity issues were inconsistent with the Department's policy.

81.   Mr. Sager further told the Blaises that if they did not withdraw their application, then their responses would be noted in the Department's records and would negatively impact their ability to be licensed foster parents in Washington in the future.

82.   The Blaises refused to change their responses and refused to withdraw their foster parent application. Mr. Sager indicated that the Department would send its denial letter shortly. When the Blaises pressed him for a more definite time frame, Mr. Sager said the letter would take about two weeks.

83.   Mr. Sager did not get back to the Blaises as promised, and the Department did not send any letter within the anticipated timeframe. In response to an inquiry from James sent one week later, Mr. Sager texted that he did not "have an answer yet. I am waiting to hear back from someone."

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 21**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

84.    Two weeks later—in mid-March—Mr. Sager again texted James, this time asking whether James "could meet me and a coworker" the following week.

85.    In an email sent several days later, Mr. Sager explained to James that he "wanted to meet with you and my co-worker. . . . She is a foster care licensor in Spokane. She also is our LGBTQ+ lead. I was hoping we all could meet together as she may have additional resources regarding LGBTQ+ that may be of benefit. We felt as a department we wanted to provide another opportunity to hopefully come to a resolution regarding the [Interstate Compact on the Placement of Children] request for H.V."

86.    The Blaises agreed to meet with Department representatives and be questioned for a third time. Once again, the sole focus of the interview questions posed by the representatives of the Department was on the manner in which the Blaises would respond to H.V.'s possible future sexual orientation and gender identity when she was a teenager.

87.    At the time of this third interview, H.V. was six months old.

88.    As they had done during the first two interviews with the Department, both Gail and James cooperated fully during the third interview session, and again responded to all of the questions openly, honestly, and in a manner consistent with their religious beliefs.

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

89.    At the end of this third interview, Mr. Sager's co-worker told the Blaises that they were at "an impasse" as how to proceed with the foster parent license application.

90.    Several days later, after hearing nothing from the Department, James contacted Mr. Sager and asked whether the Department "will be able to license us for foster care? Please send me your decision in writing ASAP."

91.    On March 30, 2020, Mr. Sager emailed James saying only "I don't have an answer at this time. We are in discussion with others about how to proceed and I will get an answer to you as soon as we have information to provide."

92.    On April 5, 2020, Mr. Sager again emailed James and again said that the Department still had not made a decision. According to Mr. Sager, "Licensing division is still discussing with the appropriate chain of command about how to proceed, and will have an answer as soon as possible."

93.    Once again, Mr. Sager stated that he had "been asked to provide you both with a training opportunity that pertains to what we have discussed previously," and provided a link that training. That training consisted of a two-hour course that focused on such topics as "Myths and stereotypes about LGBTQ+ children/youth" and "how to promote the health, safety and well-being of the children/youth in care."

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 23**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

94.    The Blaises have completed a portion of their training to become licensed foster parents. After their first interview with Mr. Sager in January 2020, Mr. Sager advised the Blaises not to engage in any preparation that would cost them any money.

95.    Mr. Sager told the Blaises that, but for their answers to questions about H.V.'s hypothetical sexual orientation and gender identity, they were acceptable applicants to become licensed foster parents.

## The Denial of the Blaises' Application

96.    After filing of this lawsuit and nearly three and a half months later, on June 16, 2020, the Department sent the Blaises a letter denying their application to become foster parents.

97.    The letter acknowledged that there were "many situations" where the Blaises would be able to support a foster child who identified as LGBTQ+, but not if supporting services "were not consistent with their religious beliefs."

98.    For example, the letter notes that the Blaises "would support a foster child and allow the child's partner in their home and on trips."

99.    The Blaises also stated that "[w]hile we are not willing to commit to hormone treatment far into the future for an infant, in the very unlikely event that baby [H.V.] develops gender dysphoria in the future (or any other medical

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 24**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

condition) we will provide her with loving, medically and therapeutically appropriate care that is consistent *with sound science* and our beliefs as Seventh-day Adventists and Christians." (Emphasis added).

100.    However, the Blaises also expressed that, consistent with their sincerely held religious beliefs – they could not presently affirm that they would agree to call H.V. by a name other than her legal name, use pronouns that are inconsistent with H.V's birth sex, or support the child in undergoing counseling or medical procedures to transition to the opposite sex.

101.    Concluding that "services that are consistent with [the Blaises] religious beliefs" would "not meet the Department's minimum licensing requirements," the Department denied the Blaises' application.

102.    The Department has never identified what standard the Blaises' would be required to meet in affirming what they would do in any given future situation before they can know the precise needs of the child or the prevailing relevant medical advice.    The standard instead is flexible, and according to the Department's "Family Home Study Questions and Prompts," "[c]oncerns about applicants do not automatically result in a denial of a foster care license, or even require additional training."

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 25**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

103.  In the meantime, while the Department has delayed and ultimately denied the Blaises' application over these uncertainties, the Idaho Department of Health and Welfare has placed H.V. in foster care with non-relative foster parents in Idaho and is moving forward to terminate the parental rights of H.V.'s biological parents.

104.  Separate and apart from whether the Blaises are able to serve as foster parents for H.V., they are committed to becoming licensed foster parents in Washington.

105.  They have an honest and unwavering desire to help children in need and truly want the opportunity to provide a safe, stable and caring home for children.

106.  Jim and Gail Blais are willing to serve as foster parents for children and to love and encourage them regardless of their race, sex, religion, national origin, ancestry, age, disability, familial status, sexual orientation, or gender identity.

## V. <u>CLASS ALLEGATIONS</u>

107.  This action properly is maintainable as a class action pursuant to Federal Rule of Civil Procedure 23(b)(2).

108.  **Class Definition**: The Rule 23(b)(2) class is defined as follows:

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 26**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1
2
3
4

> All individuals who applied for a foster care license with the Washington Department of Children, Youth and Families at any time after July 2018 and who were denied a foster care license on the basis of their sincerely-held religious beliefs.

5   109.   The following people are excluded from the Class: (1) any Judge or

6  Magistrate presiding over this action and members of their families; (2) persons

7  whose claims in this matter have been finally adjudicated on the merits or

8  otherwise released; (3) Plaintiffs' counsel and Defendant's counsel; and (4) the

9  legal representatives, successors, and assigns of any such excluded persons.

10   110.   The proposed class definition is precise, objective and presently

11  ascertainable, and it is administratively feasible for the Court easily to ascertain

12  whether a particular individual is a member of the class.

13   111.   **Numerosity**: On information and belief, the members of the class are

14  so numerous that joinder of all members of the class is impracticable. Members of

15  the Class can be identified through Defendant's records and discovery.

16   112.   **Commonality**: Certification of the class is desirable and proper

17  because there are questions of law and fact common to all members of class. Such

18  common questions for the Class include, but are not necessarily limited to, the

19  following:

20
**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 27**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

a.    Whether the Department's interpretation and enforcement of its LGBTQ+ policies places an undue burden on religious adherents;

b.    Whether Department officials have unfettered discretion that is not tied to particularized, objective criteria in assessing foster care license applications;

c.    Whether the Department applies foster child placement policies to decisions relating to foster care license applications;

d.    Whether the Department accommodates sincerely-held religious beliefs in its decisions regarding foster care license applications;

e.    Whether the Department could satisfy its goal of protecting LGBTQ+ youth in other ways less restrictive to religion;

113.    **Typicality**: Certification of the class is desirable and proper because Plaintiffs' claims are typical of the claims of other members of the Class that Plaintiffs seek to represent.

114.    **Adequate Representation**: Certification of the class is desirable and proper because Plaintiffs will fairly and adequately protect the interests of the Class they seek to represent.  There are no conflicts of interest between Plaintiffs' claims and those of other members of the Class, and Defendant has no defenses unique to Plaintiffs.  Plaintiffs are cognizant of their duties and responsibilities to

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 28**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    the Class.  Plaintiffs' attorneys are qualified, experienced and able to conduct the

2    proposed class action litigation.

3        115.  This action should proceed as a class action under Fed. R. Civ. P.

4    23(b)(2) because Defendant has acted or refused to act on grounds generally

5    applicable to the Class, so that final injunctive relief or corresponding declaratory

6    relief is appropriate respecting the class as a whole.

7        116.  **Policies Generally Applicable to the Class**: Certification of the

8    Class is desirable and proper because Defendant has acted or refused to act on

9    grounds generally applicable to the Class as a whole, thereby requiring the Court's

10   imposition of uniform relief to ensure compatible standards of conduct toward the

11   members of the Class and making final injunctive relief appropriate with respect to

12   the Class as a whole.  Defendant's policies that Plaintiffs challenge apply and

13   affect members of the Class uniformly, and Plaintiffs' challenge of these policies

14   hinges on Defendant's conduct with respect to the Class as a whole, not on facts or

15   law applicable only to Plaintiffs.

16       117.  **Superiority**: Certification of the class is desirable and proper because

17   class proceedings are superior to all other available methods for the fair and

18   efficient adjudication of this controversy.  Individual litigation would increase the

19   delay and expense to all parties and the Court and would require duplicative

20

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 29**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    consideration of the common legal and factual issues presented. By contrast, a

2    class action presents far fewer management difficulties and provides the benefits of

3    single adjudication, economy of scale, and comprehensive supervision by a single

4    Court. Economies of time, effort, and expense will be fostered and uniformity of

5    decisions will be ensured.

**COUNT I**
**42 U.S.C. § 1983**
**VIOLATION OF THE FIRST AMENDMENT**
**TO THE U.S. CONSTITUTION**
**FREE EXERCISE CLAUSE —INDIVIDUALIZED ASSESSMENT**

9    118.  Plaintiffs reallege and incorporate by reference all the foregoing

10    paragraphs and all subparagraphs as if they were fully set forth herein.

11    119.  The Department's denial of the Blaises' application for a foster

12    license places a substantial burden on their religious exercise by forcing them to

13    choose between the opportunity to be considered as foster parents, and potentially

14    adoptive parents, for their great-granddaughter and maintaining their religious

15    beliefs.

16    120.  The Department's denial of the Class members' applications for a

17    foster license places a substantial burden on their religious exercise by forcing

18    them to choose between the opportunity to be considered as foster parents and

19    maintaining their religious beliefs.

20

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 30**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

121.   The Department's denial of the Blaises' and Class members' applications also imposes a substantial burden on their religious exercise by forcing them to choose between the opportunity to be considered as foster parents for other children in need and maintaining their religious beliefs.

122.   The Department's ultimate decision to deny the Blaises' and Class members' applications was based on an individualized assessment of their religious beliefs and their responses to the Department's questions.

123.   When a law or policy gives the government discretion to make case-by-case decisions based on the unique circumstances of a particular situation, strict scrutiny is required.

124.   The Department lacks a compelling governmental interest in requiring the Blaises or other foster-care applicants proactively to affirm how they will respond to a hypothetical situation that may or may not happen sometime in the future.

125.   To the extent the Department has a compelling governmental interest, there are other ways it could meet that interest that are less restrictive to religion.

126.   Absent declaratory and injunctive relief, the Blaises and Class members have been, and will continue to be, irreparably harmed by the Department's actions.

**Second Amended Class Action Complaint for Declaratory Relief and Preliminary and Permanent Injunction - 31**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

## COUNT II
## 42 U.S.C. § 1983
## VIOLATION OF THE FIRST AMENDMENT
## TO THE U.S. CONSTITUTION
## FREE EXERCISE CLAUSE —IMPOSING SPECIALIZED
## DISABILITIES ON THE BASIS OF RELIGIOUS BELIEF

127.   Plaintiffs reallege and incorporate by reference all the foregoing paragraphs and all subparagraphs as if they were fully set forth herein.

128.   The Blaises and Class members are qualified to be licensed as foster parents and were denied a license only because they stated they would support a hypothetical foster child who might identify as LGBTQ+ consistent with their religious beliefs.

129.   The Department denied the Blaises' and Class members' applications because providing services that are consistent with their religious beliefs would "not meet the Department's minimum licensing requirements.

130.   Barring the Blaises and Class members, based on their religious beliefs, from providing any foster care services, even for their own great-granddaughter, violates their constitutional rights.

131.   The First Amendment excludes all governmental punishment of religious beliefs as such.

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 32**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

132.   The government cannot punish the expression of religious beliefs that it considers false or impose special disabilities on the basis of religious views or religious status.

133.   Such governmental punishment of religious beliefs is never permissible.

134.   The Department's denial of the Blaises' and Class members' foster care license based on their religious beliefs was per se unconstitutional under the Free Exercise Clause.

135.   Absent declaratory and injunctive relief, the Blaises and Class members have been, and will continue to be, irreparably harmed by the Department's actions.

## COUNT III
### 42 U.S.C. § 1983
### VIOLATION OF THE FIRST AMENDMENT
### TO THE U.S. CONSTITUTION
### FREE EXERCISE CLAUSE —NOT NEUTRAL

136.   Plaintiffs reallege and incorporate by reference all the foregoing paragraphs and all subparagraphs as if they were fully set forth herein.

137.   Government action is not "neutral" if it "restrict[s] practices because of their religious motivation." *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993).

Second Amended Class Action Complaint for
**Declaratory Relief and Preliminary and
Permanent Injunction - 33**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

138. "Facial neutrality is not determinative." *Lukumi*, 508 U.S. at 534. Rather the Free Exercise Clause also forbids "covert suppression" of religion and "subtle departures from neutrality." *Id*.

139. On information and belief, the Department's policy here was motivated traditional religious beliefs about sexuality and gender identity.

140. The Department excludes potential foster parents who will not "affirm" LGBTQ+ children in specific ways, even if such acquiescence violates the foster parents' own sincerely-held religious beliefs.

141. The denial of the Blaises' and Class members' applications for a foster license places via non-neutral proceedings imposed a substantial burden on their religious exercise by forcing them to choose between the opportunity to be considered as foster parents and maintaining their religious beliefs.

142. The policy imposed a substantial burden on the Blaises' and Class members' religious exercise by forcing them to choose between the opportunity to be considered as foster parents and maintaining their religious beliefs.

143. The Blaises and Class members are entitled to be evaluated as foster parents via a process that is not biased against their religious beliefs.

144. At minimum, a government policy that is not neutral triggers strict scrutiny.

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 34**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

145.  The Department lacks a compelling governmental interest in requiring the Blaises or other foster-care applicants to proactively affirm how they will respond to a hypothetical situation that may or may not happen sometime in the future.

146.  To the extent the Department has a compelling governmental interest, there are other ways it could meet that interest that are less restrictive to religion.

147.  Absent declaratory and injunctive relief, the Blaises and Class members have been, and will continue to be, irreparably harmed by the Department's actions.

**COUNT IV**
**42 U.S.C. § 1983**
**VIOLATION OF THE FIRST AMENDMENT**
**TO THE U.S. CONSTITUTION**
**FREE SPEECH—COMPELLED SPEECH**

148.  Plaintiffs reallege and incorporate by reference all the foregoing paragraphs and all subparagraphs as if they were fully set forth herein.

149.  The Government cannot compel a party "to be an instrument for fostering public adherence to an ideological point of view." *Wooley v. Maynard*, 430 U.S. 705, 715 (1977).

150.  Government regulations that "target speech based on its communicative content . . . are presumptively unconstitutional and may be justified

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 35**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    only if the government proves that they are narrowly tailored to serve compelling

2    state interests.

3        151.  "[F]reedom of speech includes both the right to speak freely and the

4    right to refrain from speaking at all. . . . Compelling individuals to mouth support

5    for views they find objectionable violates [a] cardinal constitutional command"

6    and should be "universally condemned." *Janus*, 138 S. Ct. 2448, 2463 (2018).

7    Indeed,

8        152.  The Blaises' great-granddaughter is an infant and, like most children

9    in foster care, may never identify as LGBTQ+.

10        153.  Requiring foster parents to affirm as an ideological matter the state's

11    views on sexual orientation and gender identity, regardless of whether those views

12    will ever be implicated in providing foster care is a requirement of speech, not

13    conduct.

14        154.  By requiring the Blaises and Class members, as a condition for getting

15    a license, to affirm what they would do in a hypothetical situation that might never

16    arise, the state is compelling speech to foster adherence to the government's

17    preferred point of view.

18

19

20    **Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 36**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

155.   The Department does not have a compelling interest in forcing the Blaises to affirm that they will speak in certain ways regarding hypothetical issues that may or may not ever arise.

156.   To the extent the Department alleges a compelling interest, there are other ways to meet that interest that are less restrictive of religion.

157.   Absent declaratory and injunctive relief, the Blaises and Class members have been, and will continue to be, irreparably harmed by the Department's actions.

## COUNT V
### 42 U.S.C. § 1983
### VIOLATION OF THE FOURTEENTH AMENDMENT
### TO THE U.S. CONSTITUTION
### SUBSTANTIVE DUE PROCESS
### (On Behalf of Plaintiff James and Gail Blais Individually)

158.   Plaintiffs reallege and incorporate by reference all the foregoing paragraphs and all subparagraphs as if they were fully set forth herein.

159.   Substantive due process forbids the government from arbitrarily interfering in "those privileges long recognized at common law as essential to the orderly pursuit of happiness" by a free people. *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923).

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

160.  Such privileges include the right to maintain family relationships without undue interference by the government.

161.  These rights and privileges extend beyond immediate family members to protect the right of extended family members to maintain familial relationships without undue government interference.

162.  At minimum, substantive due process supports the Blaises' right to be considered as foster parents for their great-granddaughter without undue government interference.

163.  The state's policy bars the Blaises from being considered as foster parents to their great-granddaughter unless they agree affirm the state's approach to LGBTQ+ children, even though their great-granddaughter is still an infant, may never identify as LGBTQ+, or could be adopted before such concerns arise.

164.  The policy thus unduly interferes with the Blaises' substantive due process right as family to be considered as foster parents for their great-granddaughter.

165.  Absent declaratory and injunctive relief, the Blaises have been, and will continue to be, irreparably harmed by the Department's actions.

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 38**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1

## COUNT VI
## 42 U.S.C. § 1983
## VIOLATION OF THE FIRST AMENDMENT
## TO THE U.S. CONSTITUTION
## FREE EXERCISE—HYBRID RIGHTS

166.   Plaintiffs reallege and incorporate by reference all the foregoing paragraphs and all subparagraphs as if they were fully set forth herein.

167.   Government restrictions that burden religion are subject to strict scrutiny when the restrictions simultaneously burden other constitutional rights. *Employment Div. v. Smith*, 494 U.S. 872, 881 (1990).

168.   The state's policy impinges not only on the Blaises' and Class members' freedom of religion, but also on their rights to freedom of speech and their substantive due process right to have equal access to the right to foster and potentially adopt their own kin without having to accept the government's viewpoints on child rearing.

169.   Because the government regulations at issue infringe multiple constitutional rights, strict scrutiny applies.

170.   The Department lacks a compelling governmental interest in requiring the Blaises or other foster-care applicants to proactively affirm how they will respond to a hypothetical situation that may or may not happen sometime in the future.

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 39**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

171.   To the extent the Department has a compelling governmental interest, there are other ways it could meet that interest that are less restrictive to religion.

172.   Absent declaratory and injunctive relief, the Blaises and Class members have been, and will continue to be, irreparably harmed by the Department's actions.

**COUNT VII**
**42 U.S.C. § 1983**
**VIOLATION OF THE FIRST AMENDMENT**
**TO THE U.S. CONSTITUTION**
**UNCONSTITUTIONAL CONDITIONS**

173.   Plaintiffs reallege and incorporate by reference all the foregoing paragraphs and all subparagraphs as if they were fully set forth herein.

174.   In the same way that the Department generally cannot directly compel speech or the free exercise of religion, it cannot do so indirectly through conditioning a government benefit (here a license to foster). *Agency for Int'l Dev. v. AOSI*, 570 U.S. 205, 214 (2013).

175.   The ability of the Blaises and Class members to apply to the government for a license that would allow them to serve as foster parents is a valuable benefit.

176.   That benefit cannot be conditioned on the Blaises or Class members giving up constitutional rights.

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

177. The Department has conditioned the issuance of a license on the Blaises' and Class members' agreement to abandon rights under the First and Fourteenth Amendments.

178. For all the reasons above, the Department cannot condition a government benefit on unconstitutional actions without satisfying strict scrutiny.

## PRAYER FOR RELIEF

Plaintiffs Gail and James Blais, individually and on behalf of all others similarly situated, request that the Court enter a judgment in their favor and against Defendant Hunter, Secretary of Washington State Department of Children, Youth and Families for the following:

1.     Declaratory relief that the denial of the Blaises' and Class members' application to become licensed foster parents by Defendant and the Department based on the Blaises' and Class members' sincerely-held religious beliefs is unconstitutional;

2.     Injunctive relief, requiring Defendant and the Department he oversees to grant the Blaises' foster parent application.

3.     Injunctive relief, enjoining Defendant and the Department he oversees from enforcing or threatening to enforce Policy 6900 or any other Department policy, regulation or practice with regard to the Department's consideration of an

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 41**

LAW OFFICES OF
MEYER, FLUEGGE & TENNEY, P.S.
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1    application to become licensed foster parents in a manner that conflicts with the

2    applicant's sincerely held religious beliefs concerning sexual orientation or gender

3    identity.

4         4.     Reasonable attorneys' fees and costs of suit under 42 U.S.C. § 1988 or

5    such other authority as may authorize such an action; and

6         5.     Such other and further relief as the Court deems just and proper.

7         RESPECTFULLY SUBMITTED this 9th day of December, 2020.

8                 s/ Jerome R. Aiken
                   JEROME R. AIKEN, WSBA #14647

9                 Attorneys for Plaintiffs
                   James Blais and Gail Blais

10                Meyer, Fluegge & Tenney, P.S.
                   Phone: 509/575-8500 – Fax: 509/575-4676

11                Email: aiken@mftlaw.com

12                s/ Todd R. McFarland
                   TODD R. McFARLAND

13                General Conference of Seventh-day Adventists
                   Attorneys for Plaintiffs

14                Phone: 301/680-6321; Fax: 301/680-6329
                   Email: McFarlandT@adventist.org

15                Admitted pro hac vice

16                s/ Andrew G. Schultz
                   ANDREW G. SCHULTZ, NM No. 3090

17                Rodey, Dickason, Sloan, Akin & Robb, P.A.
                   Attorneys for Plaintiffs

18                Phone: 505/765-5900; Fax: 505/768-7395
                   Email: aschultz@rodey.com

19                Admitted pro hac vice

20

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 42**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

1

## <u>CERTIFICATE OF TRANSMITTAL</u>

2

I hereby certify under penalty of perjury of the laws of the state of
Washington that on December 9, 2020, I electronically filed the foregoing
document with the Clerk of the Court using the CM/ECF System which will
automatically provide service on the below listed parties:

3

4

5

| | |
|---|---|
| **For Plaintiffs James and Gail Blais:**<br>Mr. Todd R. McFarland, Associate General Counsel<br>General Conference of Seventh-Day Adventists<br>12501 Old Columbia Pike<br>Silver Spring, MD 20904<br>McFarlandT@adventist.org | _X_  via CM/ECF |
| Mr. Andrew G. Schultz<br>Rodey, Dickason, Sloan, Akin & Robb, P.A.<br>P.O. Box 1888<br>Albuquerque, NM 87103<br>aschultz@rodey.com | _X_  via CM/ECF |
| **For Defendant Ross Hunter:**<br>Mr. Jeffrey C. Grant, Assistant Attorney General<br>Office of the Attorney General<br>88 Fifth Avenue, Suite 2000<br>Seattle, WA 98104<br>Jeffrey.grant@atg.wa.gov | _X_  via CM/ECF |
| **For Defendant Ross Hunter:**<br>Mr. Daniel Judge, Senior Counsel<br>Mr. Drew Pugsley, Assistant Attorney General<br>Office of the Attorney General<br>7141 Cleanwater Drive SW / P.O. Box 40124<br>Olympia, WA 98504-0124<br>Daniel.Judge@atg.wa.gov / Drew.Pugsley@atg.wa.gov | X_  via CM/ECF |

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

**Second Amended Class Action Complaint for
Declaratory Relief and Preliminary and
Permanent Injunction - 43**

LAW OFFICES OF
**MEYER, FLUEGGE & TENNEY, P.S.**
230 South Second Street · P.O. Box 22680
Yakima, WA 98907-2680
Telephone (509) 575-8500

| | |
|---|---|
| **For Amicus Curiae Center for Children & Youth Justice:**<br>Mr. Ryan C. Castle<br>Castle Law Firm, PLLC<br>1313 E. Maple Street, Suite 213<br>Bellingham, WA  98225<br>ryan@ryancastlelawfirm.com | <u>X</u>  via CM/ECF |
| **For Amicus Curiae Center for Children & Youth Justice:**<br>Mr. Daniel J. Shih<br>Susman Godfrey L.L.P.<br>1201 Third Avenue, Suite 3800<br>Seattle, WA  98101-3000<br>dshih@susmangodfrey.com | <u>X</u>  via CM/ECF |

<u>   /s Sheryl A. Jones                         </u>.
SHERYL A. JONES, Legal Assistant
Meyer, Fluegge & Tenney, P.S.
jones@mftlaw.com

**Second Amended Class Action Complaint for**
**Declaratory Relief and Preliminary and**
**Permanent Injunction - 44**